```
 1              UNITED STATES DISTRICT COURT

 2             CENTRAL DISTRICT OF CALIFORNIA

 3         HONORABLE DAVID O. CARTER, JUDGE PRESIDING

 4                 - - - - - - -

 5   UNITED STATES OF AMERICA,        )
                                      )      CERTIFIED
 6          Plaintiff,                )
                                      )
 7      vs.                           ) No. 8:20-cr-00002-DOC
                                      )    Item Number 2
 8   HOANG XUAN LE, also known as     )
     Wayne, also known as Wangsta; and)
 9   SHEILA MARIE RITZE,              )
                                      )
10          Defendants.               )
     _____)
11

12

13

14          REPORTER'S TRANSCRIPT OF PROCEEDINGS

15            Hearing on Motion to Dismiss

16               Santa Ana, California

17            Wednesday, March 3, 2021

18

19

20

21   Debbie Gale, CSR 9472, RPR, CCRR
     Federal Official Court Reporter
22   United States District Court
     411 West 4th Street, Room 1-053
23   Santa Ana, California 92701
     (714) 558-8141
24

25
```

```
1    APPEARANCES OF COUNSEL:

2    FOR THE UNITED STATES OF AMERICA:

3          DEPARTMENT OF JUSTICE
           OFFICE OF THE UNITED STATES ATTORNEY
4          BY:  Gregory Shepherd Scally
                Assistant United States Attorney
5          411 West 4th Street
           8th Floor
6          Santa Ana, California 92701
           714-338-3592
7          gregory.scally@usdoj.gov

8          DEPARTMENT OF JUSTICE
           OFFICE OF THE UNITED STATES ATTORNEY
9          BY:  Vibhav Mittal
                Assistant United States Attorney
10         411 West 4th Street
           8th Floor
11         Santa Ana, California 92701
           714-338-3534
12         vibhav.mittal@usdoj.gov

13   FOR DEFENDANT 1) HOANG XUAN LE:

14         Craig Wilke (CJA appointed)
           LAW OFFICE OF CRAIG WILKE
15         305 North Harbor Boulevard, Suite 216
           Fullerton, California 92832
16         714-870-8900
           craig@craigwilkelaw.com
17
     FOR DEFENDANT 2) SHEILA MARIE RITZE:
18
           David W. Wiechert (CJA appointed)
19         WIECHERT MUNK & GOLDSTEIN PC
           27136 Paseo Espada, Suite B1123
20         San Juan Capistrano, CA 92675
           949-361-2822
21         dwiechert@aol.com

22

23

24

25
```

1                    **I N D E X**

2    **PROCEEDINGS**                                    **PAGE**

3    HEARING ON MOTION TO DISMISS COUNTS ONE THROUGH THREE

4    Appearances                                        4

5    Defense Argument (by Mr. Wilke)                    5

6    Defense Argument (by Mr. Wiechert)                 23

7    Government's Argument (by Mr. Scally)              37

8    Defense Response (by Mr. Wilke)                    44

9    Defense Response (by Mr. Wiechert)                 47

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

8:20-CR-00002-DOC - 3/3/2021 - Item Number 2

4

|       |    |                                                                 |
|-------|----|-----------------------------------------------------------------|
|       | 1  | **SANTA ANA, CALIFORNIA, WEDNESDAY, MARCH 3, 2021**             |
|       | 2  | **Item Number 2**                                               |
|       | 3  | (1:26 p.m.)                                                     |
| 01:26 | 4  | THE COURT:  All right.  Good afternoon.  I hope                 |
|       | 5  | all of you are well.  We'll go on the record in the matter      |
|       | 6  | of Hoang Xuan Le and Sheila Marie Ritze.  It's                  |
|       | 7  | Case Number 20-00002.                                           |
| 01:27 | 8  | And, Counsel, for the record, would you be kind                 |
|       | 9  | enough to introduce yourself.  And begin with Greg Scally, I    |
|       | 10 | believe, for the United States.                                 |
| 01:27 | 11 | **APPEARANCES**                                                 |
| 01:27 | 12 | MR. SCALLY:  Thank you, Your Honor.  Good                       |
|       | 13 | afternoon.  Greg Scally and Vib Mittal for the                  |
|       | 14 | United States.                                                  |
| 01:27 | 15 | THE COURT:  All right.  Thank you very much.                    |
| 01:27 | 16 | And Mr. Wilke?  There you are.                                  |
| 01:27 | 17 | MR. WILKE:  Good afternoon.  Good afternoon,                    |
|       | 18 | Your Honor.                                                     |
| 01:27 | 19 | THE COURT:  It's because the screens are changed               |
|       | 20 | around.  So normally you'd be over here, Mr. Wilke, and we'd    |
|       | 21 | have you on this side of the screen.  I'm joking with you a     |
|       | 22 | little bit.  But, Mr. Wilke, it's nice to see you.             |
| 01:27 | 23 | And, Mr. Wiechert, if you'd make your appearance.              |
| 01:27 | 24 | MR. WIECHERT:  Yes, Your Honor.  David Wiechert on              |
|       | 25 | behalf of Sheila Ritze, who is present by video and            |

|       |    |                                                              |
|-------|----|--------------------------------------------------------------|
|       | 1  | consenting to video, Your Honor.                             |
| 01:27 | 2  | THE COURT:  And, Sheila Ritze, I'm waving at you.            |
|       | 3  | Can you see me and hear me?                                   |
| 01:27 | 4  | DEFENDANT RITZE:  (No audible response.)                     |
| 01:27 | 5  | THE COURT:  Now, I can't hear you.  You've got               |
|       | 6  | your microphone muted.                                        |
| 01:27 | 7  | DEFENDANT RITZE:  Yes, Your Honor, I can.                     |
| 01:27 | 8  | THE COURT:  Okay.  Terrific.  Thank you very much.           |
| 01:27 | 9  | And, Mr. Le, can you see and hear me?  I'm waving            |
|       | 10 | at you.  Un-mute your microphone so I know that you can      |
|       | 11 | speak.                                                        |
| 01:28 | 12 | DEFENDANT LE:  Yes, sir, I can hear you.  Yes,               |
|       | 13 | Your Honor.                                                   |
| 01:28 | 14 | THE COURT:  Okay.  Thank you very much.                      |
| 01:28 | 15 | Then, Counsel, I've got some initial thoughts, but          |
|       | 16 | I'd rather listen to your arguments briefly and then I'd    |
|       | 17 | like to share my notes with you if I still have those same  |
|       | 18 | thoughts.                                                     |
| 01:28 | 19 | **DEFENSE ARGUMENT**                                          |
| 01:28 | 20 | MR. WILKE:  Issue before the Court is an issue of           |
|       | 21 | statutory interpretation and -- and, essentially, it asks   |
|       | 22 | the Court to decide what Congress meant in 1948 when it     |
|       | 23 | defined the special maritime territorial jurisdiction of the |
|       | 24 | United States to include, quote, "the high seas," as well   |
|       | 25 | as, quote, "other waters within the admiralty and maritime  |

8:20-CR-00002-DOC - 3/3/2021 - Item Number 2

6

|       |    |                                                              |
|-------|----|--------------------------------------------------------------|
|       | 1  | jurisdiction'a the United States, and out of jurisdiction of |
|       | 2  | any particular stay [sic]."                                   |
| 01:28 | 3  | That's the first question of statutory                       |
|       | 4  | interpretation.  The second question of statutory            |
|       | 5  | interpretation is the 1994 Congressional declaration that    |
|       | 6  | the government relies on.  And the -- the question presented |
|       | 7  | there is, you know, what did Congress mean in 1994 when it   |
|       | 8  | declared that all territorial sea, defined by --             |
| 01:29 | 9  | THE COURT:  Just a moment.                                   |
| 01:29 | 10 | Is that the 901 provision?                                   |
| 01:29 | 11 | MR. WILKE:  The 901(a) argument the government               |
|       | 12 | makes.                                                        |
| 01:29 | 13 | THE COURT:  Okay.                                            |
| 01:29 | 14 | MR. WILKE:  Yeah, that's exactly it.                         |
| 01:29 | 15 | Both of those questions are legal questions.                 |
|       | 16 | One's a statutory interpretation.  Um, and I'll start with   |
|       | 17 | the -- what -- what I consider the main argument of the      |
|       | 18 | government.  Um, and they -- they essentially bring first    |
|       | 19 | two arguments.  One that, uh, waters up to -- all waters up  |
|       | 20 | to the shore constitute the high seas.  That's one argument. |
| 01:29 | 21 | Then they bring the second argument that the 1994            |
|       | 22 | declaration by Congress expanded the definition of special   |
|       | 23 | maritime and territorial jurisdiction.                       |
| 01:29 | 24 | THE COURT:  Under 7(a)?                                      |
| 01:29 | 25 | MR. WILKE:  Under 7(a) and under 7(1), yes, to              |

Case 8:20-cr-00002-DOC   Document 196   Filed 06/30/21   Page 7 of 51   Page ID
#:1018
8:20-CR-00002-DOC  -  3/3/2021 - Item Number 2

7

|       |    |                                                         |
|-------|----|---------------------------------------------------------|
|       | 1  | include all waters going to the shore.                  |
| 01:29 | 2  | THE COURT:  Okay.                                        |
| 01:29 | 3  | MR. WILKE:  The outset -- I wanna point out that        |
|       | 4  | those -- those two arguments are incompatible with each |
|       | 5  | other; right?  Because if, in fact, that's what Congress |
|       | 6  | meant to do in 1994, Congress understood that if the    |
|       | 7  | government were right about that argument -- the argument|
|       | 8  | about the high seas would be contrary to any Congress, uh, |
|       | 9  | Congressional understanding.  So they -- they -- it's not -- |
|       | 10 | those arguments the government makes are alternative    |
|       | 11 | arguments and they're essentially inherently contradictory |
|       | 12 | of each other.                                          |
| 01:30 | 13 | I wanna start, though, with the 1948 issue and          |
|       | 14 | that -- and the 7(1) definition of special maritime and |
|       | 15 | territorial jurs- -- um, it -- it has two -- two sub -- |
|       | 16 | subdivisions, if you will, or subcomponents.            |
| 01:30 | 17 | First, "high seas," if wat -- uh, any crime or a        |
|       | 18 | crime of this nature committed on the high seas is within |
|       | 19 | federal jurisdiction.                                   |
| 01:30 | 20 | Um, begging the question of what did Congress mean      |
|       | 21 | by "high seas."  That term is -- has a lengthy history.  And |
|       | 22 | we -- we laid out much of that history in our papers.  In |
|       | 23 | particularly the reply brief, I attempted to get the court |
|       | 24 | some sense of where those -- that terminology comes from. |
| 01:31 | 25 | But at a minimum, the Court just looks at the           |

8:20-CR-00002-DOC - 3/3/2021 - Item Number 2

8

|       |    |                                                                      |
|-------|----|----------------------------------------------------------------------|
|       | 1  | plain language.  The term "high seas" means -- "high" means          |
|       | 2  | like a highway.  It's open.  It's available by which anybody          |
|       | 3  | could travel.  The historical understanding of that term was          |
|       | 4  | that it was those ocean waters over which no nation                  |
|       | 5  | exercised sovereignty.                                               |
| 01:31 | 6  | The government's entire argument on "the high seas                   |
|       | 7  | goes all the way to the shore" relies on language in early           |
|       | 8  | 18th Century cases -- early to mid 18th Century cases, in            |
|       | 9  | which this issue was not before the Court, in which the              |
|       | 10 | issue before the Court --                                            |
| 01:31 | 11 | *(Court reporter requests clarification for the*                     |
|       | 12 | *record.)*                                                           |
| 01:31 | 13 | MR. WILKE:  Yeah.                                                    |
| 01:31 | 14 | The issue -- the cases on which the government                       |
|       | 15 | relies are these, uh, early-to-mid 19th Century (audio              |
|       | 16 | interference) in which this issue about how far federal             |
|       | 17 | jurisdiction comes to the shore was not at issue.  There            |
|       | 18 | were cases like *Wiltberger*, which was a case of murder            |
|       | 19 | committed on a freighter in the Tigris River in China, uh,          |
|       | 20 | where the (audio interference) was simply distinguishing            |
|       | 21 | high seas from inland waters.                                        |
| 01:32 | 22 | That's a common issue in many'a these early cases,                  |
|       | 23 | which really has nothing to do with the issue presented             |
|       | 24 | here.  The issue presented here is, uh, where do high seas          |
|       | 25 | begin in the ocean waters.                                          |

8:20-CR-00002-DOC - 3/3/2021 - Item Number 2

9

| | |
|---|---|
| 01:32 | 1 |
| | 2 |
| | 3 |
| | 4 |
| 01:33 | 5 |
| 01:33 | 6 |
| | 7 |
| 01:33 | 8 |
| | 9 |
| | 10 |
| | 11 |
| | 12 |
| | 13 |
| | 14 |
| 01:33 | 15 |
| | 16 |
| | 17 |
| 01:34 | 18 |
| | 19 |
| | 20 |
| | 21 |
| | 22 |
| | 23 |
| | 24 |
| | 25 |

1     By the late 18th Century, Congress was -- uh, the

2 Supreme Court was clear, and Congress's legislating with a

3 clear understanding that high seas means non-sovereign

4 waters, nonterritorial.  And I use the term sovereign.

5     *(Internet interruption)*

6     *(Court reporter requests clarification for the*

7     *record.)*

8     MR. WILKE:  I -- going back, I used the term --

9 uh, I lost my train of thought there.  But -- but if I can

10 go back just a moment, the -- um, the point I was making was

11 that by 1948, when Congress enacted 7(1), um, the definition

12 of "high seas" was settled.  It did not include sovereign

13 waters; that is, waters over any nation exercise the right

14 to exclude other nations.

15     These territorial waters, um, are, by definition,

16 sovereign waters.  So "territorial sea" and, uh, "sovereign

17 waters" are essentially interchangeable terms.

18     Um, the -- and I had cited -- I cited in our

19 papers -- and I -- I won't, you know, bore the Court with my

20 multiple citations, but there's, um, just a string of

21 Supreme Court cases beginning in 1890 uh, through the mid

22 20s in the *Cunard* case.  And then since 1948, when 7(1) was

23 enacted, you know, other cases, including *U.S. v. Louisiana*,

24 and uh, the, uh, uh -- the -- there's another case -- name

25 escapes me right now, but it's cited in our papers -- where

8:20-CR-00002-DOC - 3/3/2021 - Item Number 2

10

|       |    |                                                                  |
|-------|----|------------------------------------------------------------------|
|       | 1  | the Supreme Court, as recently as 2013 -- the Supreme            |
|       | 2  | Court's consistently recognized this idea, this definition       |
|       | 3  | of "high seas" being non-sovereign waters.                       |
| 01:34 | 4  | The Court -- for the Court to just ignore that                   |
|       | 5  | authority -- the government's argument is, well, that --         |
|       | 6  | that's -- that's fine, but that's in a different context.        |
|       | 7  | That's not the context of interpreting 7(1).                     |
| 01:35 | 8  | Problem is, at least two Circuits, including the                 |
|       | 9  | Ninth, say it is.  The *Corey* case out of the Ninth Circuit     |
|       | 10 | is interpreting 7(1).  Granted, it's as -- uh, it's in           |
|       | 11 | support of an argument that the Court makes with regard to       |
|       | 12 | 7(3).  7(1) wasn't the issue then.  But it's clearly [sic]       |
|       | 13 | that they interpret 7(1), uh, uh -- the "high seas" as used      |
|       | 14 | in 7(1) to mean non-sovereign waters.                            |
| 01:35 | 15 | There's a Fourth Circuit case also cited in my                   |
|       | 16 | papers that -- that clearly recognizes this Supreme Court        |
|       | 17 | definition of "high seas" as applicable in the 7(1) context.     |
| 01:35 | 18 | The other problem the government has is it can                   |
|       | 19 | offer the Court no reason why criminal jurisdiction under        |
|       | 20 | 7(1) should be a more punitive or different definition than      |
|       | 21 | other areas of the law.  And that whole argument runs            |
|       | 22 | counter to what we know to be the rule of lenity that            |
|       | 23 | applies in criminal cases that, uh -- uh, that, uh, uh --        |
|       | 24 | where the statute's ambiguous or unclear, the Court has to       |
|       | 25 | adopt the more lenient interpretation there.                     |

8:20-CR-00002-DOC - 3/3/2021 - Item Number 2

11

01:36   1            And the government -- just, uh, besides those two

       2   points, the government can just offer no reason why this --

       3   the term "high seas" should somehow be defined differently,

       4   uh, for purposes of federal criminal statute.  It's been

       5   defined in international law, in every other area of the law

       6   where Supreme Court has confronted the issue, and by several

       7   Circuits throughout the county, including the Ninth, in the

       8   criminal context, and in -- specifically, as it relates to

       9   7(1).  The government just has no response to that argument,

      10   Your Honor.

01:36  11            Um, the second issue -- the second issue of

      12   statutory interpretation is this issue about, uh, the 19 --

      13   the 901(a) argument, which is the AEDPA, 9 -- uh,

      14   Antiterrorism Effective Death Penalty Act [verbatim] of

      15   1994, Section 901(a) buried in the last chapter of

      16   miscellaneous provisions, clearly not the focal point of

      17   AEDPA.

01:37  18        *(Court reporter requests clarification for the*

      19        *record.)*

01:37  20            THE COURT:  A-E-D-P-A, Deb.  And they'll be

      21   capital.

01:37  22            MR. WILKE:  Um, that, um -- that, in that section,

      23   Congress declares that the special maritime and territorial,

      24   uh -- the territorial sea of the United States is defined by

      25   the '88 Presidential proclamation for purposes of criminal

|       |    |                                                                    |
|-------|----|--------------------------------------------------------------------|
|       | 1  | jurisdiction as part of the U.S., subject to its                   |
|       | 2  | sovereignty, and it's within the --                                |
| 01:37 | 3  | *(Court reporter requests clarification for the*                   |
|       | 4  | *record.)*                                                         |
| 01:38 | 5  | MR. WILKE:  That's fine.                                            |
| 01:38 | 6  | For purposes of federal criminal jurisdiction,                     |
|       | 7  | it's part of the United States, subject to its sovereignty,        |
|       | 8  | and it's within the special maritime and territorial               |
|       | 9  | jurisdiction of the United States for purposes of Title 18,        |
|       | 10 | United States Code.                                                |
| 01:38 | 11 | The government would read this declaration as                      |
|       | 12 | essentially amending 7(1).  They wanna read this declaration       |
|       | 13 | completely divorced from 7(1).  It -- Congress didn't repeal       |
|       | 14 | 7(1).  It didn't amend 7(1).  It didn't change the language        |
|       | 15 | at all.  And within 7(1) remains the exclusion of state            |
|       | 16 | waters.                                                            |
| 01:38 | 17 | So this whole argument on 901(a) is based on this                  |
|       | 18 | government's alternative definition, inconsistent and              |
|       | 19 | incompatible with its high seas argument.  Okay?  Um, and          |
|       | 20 | it's based on, *Now, okay, if it's not the high seas, it's*        |
|       | 21 | *other waters within the admiralty and maritime jurisdiction*      |
|       | 22 | *of the United States.*  And we know -- and this part of           |
|       | 23 | there [sic] that said "outside the jurisdiction of any             |
|       | 24 | particular state" -- that part doesn't really apply anymore,       |
|       | 25 | because in 1994 Congress expanded the territorial sea to           |

01:39

    1   include the waters within three miles of shore.

01:39

    2         Your Honor, that -- that reading ignores the plain

    3   language of 7(1) that remains.  It -- it writes that out of

    4   it.  Um, the Court can't ignore it.  I -- I would agree that

    5   the statutory scheme, when you read 901(a) and 7(1), is not

    6   a model of clarity.

01:39

    7         Doesn't mean the Court can just wipe out or strike

    8   part of 7(1) that Congress has chosen to left -- they left

    9   it in there in 1994, and they've continued to leave it in

   10   there since then, even though the statute's been amended at

   11   least once -- I think maybe twice -- since 1994.

01:40

   12         Um, it is the -- that argument -- the government's

   13   argument is simply incompatible with what remains to be the

   14   plain language of 7(1).  And that is, when the government is

   15   relying on this second provision of 7(1), "other waters,"

   16   um, that only will confer federal jurisdiction when the

   17   state doesn't exercise jurisdiction over those waters.  That

   18   language could not be any clearer in 7(1).

01:40

   19         It seems to me, Your Honor, that -- and the

   20   argument we put forward in our papers was that the only

   21   really reasonable reading of 901(a) -- it accounts for both

   22   its language, the historical context -- the plain language

   23   of 7(1) that remains is that what Congress was doing there

   24   is simply declaring that that expanded "territorial sea" --

   25   that area from three to twelve miles out -- they're making

| | |
|---|---|
| | 1 |
| 01:40 | 2 |
| | 3 |
| 01:41 | 4 |
| | 5 |
| | 6 |
| | 7 |
| 01:41 | 8 |
| | 9 |
| 01:41 | 10 |

1   it clear that that's now within the --
2       *(Court reporter requests clarification for the*
3       *record.)*
4           MR. WILKE:  -- that that area is within the
5   special maritime and territorial jurisdiction of the
6   United States.  And they needed to do that because before
7   then, that area was considered (audio interference) --
8       *(Court reporter requests clarification for the*
9       *record.)*
10          MR. WILKE:  Before the 1988 Presidential
11  Proclamation, um, expanding the territorial sea -- the high
12  seas began at three miles.  After the 1988 Presidential
13  Proclamation, the high seas began at twelve miles.
14          You -- the whole purpose of the declaration is to
15  make clear that there was no jurisdictional gap.  The states
16  have never exercised jurisdiction in the
17  three-to-twelve-mile range.  And, uh, that area was no
18  longer considered to be the high seas.
19          So I think the fair reading of 901(a), when
20  Congress declares that to be within the special maritime and
21  territorial jurisdiction of the United States but does not
22  otherwise amend any of the language or repeal any of the
23  language in Section 7(1), is that Congress meant to make
24  clear that the 3-to-12-mile range would be waters within
25  federal jurisdiction.  I think that's the fair reading of

8:20-CR-00002-DOC - 3/3/2021 - Item Number 2

15

|        |    |                                                              |
|--------|----|--------------------------------------------------------------|
|        | 1  | that -- that amendment, at least consistent with the         |
|        | 2  | statutory scheme.                                            |
| 01:42  | 3  | And I think that, uh, an argument that -- that the          |
|        | 4  | government would have this Court follow simply just ignores |
|        | 5  | what remains the plain language of 7(1).                     |
| 01:42  | 6  | Um, the only other points I would like to make,             |
|        | 7  | uh, at this time is that we have, um -- we have made a       |
|        | 8  | constitutional avoidance argument, Your Honor; and that is, |
|        | 9  | it is our view that if the Court were to construe the       |
|        | 10 | statutes as the government would have the Court do, um, it  |
|        | 11 | would raise serious doubt about their constitutionality.    |
| 01:43  | 12 | Um, specifically, to the extent that the Court             |
|        | 13 | adopted the government's "territorial sea" argument, the    |
|        | 14 | Court would essentially be saying that its authority -- that |
|        | 15 | federal authority over waters not on the high seas is       |
|        | 16 | derived from Article III.  That's the only basis for federal |
|        | 17 | authority there.  And in the past, the Supreme Court has not |
|        | 18 | been willing to allow that federal authority to infringe on |
|        | 19 | state police power.  It's the *Massachusetts -- Manchester v.* |
|        | 20 | *Massachusetts* case, *The Abbey Dodge* case that we cite.   |
| 01:43  | 21 | If the Court were to adopt the government's               |
|        | 22 | "territorial sea" argument that the territorial -- that the |
|        | 23 | special maritime and territorial jurisdiction expands the   |
|        | 24 | territorial sea all the way to the shore, uh, and,          |
|        | 25 | therefore, extends to state waters, essentially, um, we     |

|  |  |  |
|---|---|---|
|  | 1 | think that raises a serious, serious constitutional question |
|  | 2 | in terms of whether federal Article III authority allows for |
|  | 3 | that. |
| 01:44 | 4 | We also think that, uh, the government's "high |
|  | 5 | seas" argument makes -- raises a serious constitutional |
|  | 6 | question about whether the statute would be void for |
|  | 7 | vagueness.  The plain term "high seas" and the |
|  | 8 | interpretation now for 140 years by the Supreme Court -- |
|  | 9 | 130 years by the Supreme Court -- defining it as |
|  | 10 | non-sovereign waters, uh, a -- a reasonable person, uh, uh, |
|  | 11 | would not be on notice that a crime committed in state |
|  | 12 | waters would be subject to federal jurisdiction.  It would |
|  | 13 | raise a serious vagueness issue there as well. |
| 01:45 | 14 | Um, there's another constitutional issue that |
|  | 15 | arises here, uh, by the government's "high seas" argument |
|  | 16 | that would create a, uh -- a problem with state |
|  | 17 | convictions -- not particularly this case -- but there's |
|  | 18 | some authority from the 19th Century.  And it's the *Smith v.* |
|  | 19 | *Turner* case, the *Fox v. Ohio* case that's -- that essentially |
|  | 20 | stands for the proposition that Congress's federal authority |
|  | 21 | over the high seas is exclusive and that states cannot |
|  | 22 | exercise criminal jurisdiction or jurisdiction on crimes |
|  | 23 | committed on the high seas. |
| 01:45 | 24 | The government is trying to -- it's -- one of |
|  | 25 | their arguments is the high seas extends all the way into |

01:45

the shore.  And California, since its founding, has been exercising criminal jurisdiction three miles off its shore.

If the Court were to adopt the government's "high seas" argument, there then raises this issue about the constitutionality of any state conviction that has happened in, uh, within 3 miles of the shore because, arguably, those are no longer -- those -- under the government's, uh -- under the Supreme Court authority from the mid 19th century, those would be, uh, not -- outside of a state's fer -- jurisdiction because federal jurisdiction's exclusively over the high sea.

01:46

All of those I think are significant, significant constitutional issues that, uh, the Court runs into should it adopt the government's interpretation of the statute.

01:46

Um, we, at this point, have not brief -- fully briefed those issues.  We have raised them as part of a constitutional avoidance issue.  Um, if the Court were, after today's hearing or prior to trial, uh, gonna rule in the government's favor with regard to the interpretation of the law, we would ask for leave to bring supplemental briefing to raise the constitutional issue directly.  I point that out now because I think it does -- is a factor weighing in why we would like a pre- -- pretrial ruling on this issue.

01:47

With that I, uh -- if the Court has any questions,

|       |    |                                                              |
|-------|----|--------------------------------------------------------------|
|       | 1  | I'll be happy'a answer them.  But with that, I turn it back  |
|       | 2  | over to --                                                   |
| 01:47 | 3  | THE COURT:  How do you deal with *Miller v.*                 |
|       | 4  | *United States?*                                             |
| 01:47 | 5  | MR. WILKE:  *Miller* --                                       |
| 01:47 | 6  | THE COURT:  Disregarding it -- your briefing, you            |
|       | 7  | just really put that off to the side as I --                 |
| 01:47 | 8  | MR. WILKE:  Yeah, we -- we --                                 |
| 01:47 | 9  | *(Simultaneous speaking.)*                                    |
| 01:47 | 10 | THE COURT:  -- but that's a Ninth Circuit case.              |
| 01:47 | 11 | MR. WILKE:  And it's -- it's a Ninth Circuit case            |
|       | 12 | from 1937, Your Honor.  And we addressed it, uh, more        |
|       | 13 | thoroughly in the reply brief at pages, um --                |
| 01:47 | 14 | THE COURT:  I've read it, Counsel.  You don't need           |
|       | 15 | to refer to it.                                              |
| 01:47 | 16 | MR. WILKE:  Okay.                                             |
| 01:47 | 17 | THE COURT:  I'm looking for your argument now.               |
| 01:47 | 18 | MR. WILKE:  Yes.                                              |
| 01:47 | 19 | So couple -- couple points I'd raise there about             |
|       | 20 | *Miller.*  One, it's a different statute.  It's not          |
|       | 21 | interpreting 7(1).  It's interpreting a federal piracy       |
|       | 22 | statute.  And under the federal piracy statute, the          |
|       | 23 | jurisdictional hope there is "high seas" or "other waters    |
|       | 24 | within the admiralty and maritime jurisdiction."  That       |
|       | 25 | statute does not have the exclusion of state waters.  Okay?  |

Case 8:20-cr-00002-DOC    Document 196    Filed 06/30/21    Page 19 of 51    Page ID #:1030
8:20-CR-00002-DOC   -   3/3/2021 - Item Number 2

19

01:48   1          So that statute, um, specifically does not, uh --

2    doesn't raise the issue that's raised here; and that is, for

3    certain types of crimes -- like the one charged here --

4    Congress has specifically said, *We're only going to exercise*

5    *jurisdiction when the state doesn't.*

01:48   6          In the, um -- in the *Miller* case the Court went

7    off -- in fact, its holding was based on the alternative

8    provision.  There is language in there discussing "high

9    seas" and citing to *Murray* Fifth Circuit decision, which we

10   suggest should not be followed.  But, uh, the holding of the

11   case actually goes off on the statutory interpretation issue

12   of a different statute and relies on the subsection of other

13   waters within the admiralty and maritime jurisdiction.  It

14   does not include the exclusion that we have here.

01:49  15          This becomes, um, clear when -- when the Court

16   then goes on after holding that, under that other provision,

17   jurisdiction here is clearly proper, even if it was -- is

18   within California's jurisdiction 'cause the statute doesn't

19   exclude that.  So as a matter of statutory interpretation it

20   was not a problem.  But it also then goes on to address the

21   Article III issue and finds that, um -- finds that, uh,

22   jurisdiction -- it finds jurisdiction under Article III.

01:49  23          What that tells us is the Court specifically did

24   not rule on "high seas" ground because there's no -- there's

25   no constitutional issue if it's high seas.  "High seas" is

8:20-CR-00002-DOC - 3/3/2021 - Item Number 2

20

01:50

01:50

01:50

01:50

01:50

01:51

|    |     |
|----|-----|
| 1  | an Article -- how to regulate in -- in -- police power on |
| 2  | the high seas is Article I authority explicit. |
| 3  | Here the Court held that the authority for the -- |
| 4  | the statute in this instance, the criminal prosecution in |
| 5  | this instance, was Article III authority, which is based on |
| 6  | judicial authority over admiral -- over cases arising within |
| 7  | the admiralty and maritime jurisdiction. |
| 8  | THE COURT:  All right.  Thank you. |
| 9  | Now, with AEDPA -- you point out, from my memory, |
| 10 | in my footnote how expansive AEDPA was. |
| 11 | MR. WILKE:  Yeah. |
| 12 | THE COURT:  And in reading your papers, it |
| 13 | appeared to the court that you -- you took umbrage, which is |
| 14 | understandable with the depth and breadth of AEDPA.  But |
| 15 | it -- a very strong argument is that Congress has |
| 16 | increasingly, and apparently from the government's |
| 17 | standpoint, intended concurrent jurisdiction; that, with the |
| 18 | sophistication, specially of the narcotics trafficking, that |
| 19 | this isn't exclusive any longer with a "3-mile" for the |
| 20 | state and a "3-to-12-mile" for the federal government; that |
| 21 | Congress is starting to recognize, apparently from the |
| 22 | government's argument, that this is concurrent. |
| 23 | So my question is -- and I'm not too concerned |
| 24 | about the Coast Guard interpretation.  I think we can set |
| 25 | that off to the side until I hear the government. |

8:20-CR-00002-DOC - 3/3/2021 - Item Number 2

21

01:51    1                How do you deal with a case called *Megic*

         2    (phonetic)?

01:51    3                In the late 1990s there were a series of cases:

         4    *Casaido* (phonetic), *Judah* (phonetic), and *Megic*.  These are

         5    not cases involving murder.  They're narcotics cases.  And

         6    in those cases -- although they're not relevant to our fact

         7    situation -- it did involve, in the *Megic* case Panga boats

         8    within close proximity to the shore.

01:51    9                And there the trial -- or the Circuit basically

        10    overturned and lectured the trial court that this was a jury

        11    determination; that this was a court determination.

01:52   12                Also, if you look back, I think you'll find a case

        13    from Judge Harry Pregerson overturning Tom Whelan down in

        14    San Diego, cautioning the Court that -- with the same

        15    admonition:  That these are jury determinations.

01:52   16                And so, while you take for granted that this is to

        17    be decided by the Court, I -- I'm not too certain about

        18    that.  I don't think that these necessarily are to be

        19    decided by the Court, especially without having a factual

        20    record.  And I'm a little concerned that it's anticipatory

        21    on both of your parts.  So let me give a forewarning to the

        22    government, for a moment, as well.

01:52   23                I don't know why this isn't a Rule 29 motion.  I

        24    have no facts before me in terms of where this alleged

        25    homicide took place.  And it would appear to me that, from

01:53

01:53

01:53

01:53

01:53

01:54

```
 1   the government's perspective, they've argued in two ways as
 2   well:  Judge, you really shouldn't decide this right now,
 3   but please give us an indication of what I would like to do
 4   along with the jury instruction.
 5        The reason for that is I think the government
 6   well-understands that, if they proceed forward, that, um,
 7   they have an adverse ruling from the Court at a Rule 29,
 8   that this is res judicata and this is going to be the end of
 9   their case.
10        So it's a high-risk ballgame.  So I'm kind of
11   curious.  When I turn to the government, on one hand your
12   argument is, Judge, this is premature, Rule 29, you don't
13   have the facts -- in front of me -- which I tentatively
14   agree with you.
15        But then there's kind of -- is what I call a
16   "zinger"; and that is, Judge, please decide what the
17   appropriate jury instruction is and indicate to the defense
18   what you're going to do.
19        My guess is you're caught in a box because, if I
20   rule against you, that's going to end your case at the
21   Rule 29 for lack of jurisdictional grounds.
22        The second thing is, there's a whole series of
23   cases that I remind each of you, uh -- in the narcotics
24   field.  And the courts have been chastened by the
25   district -- or by the Circuit Courts in not submitting these
```

|       | 1  | questions to the jury. |
| 01:54 | 2  | So, Mr. Wilke, I'll come back to you in just a |
|       | 3  | moment. |
| 01:54 | 4  | Mr. Wiechert, your thoughts. |
| 01:54 | 5  | MR. WIECHERT:  Thank you, Your Honor. |
| 01:54 | 6  | I'll try not to be repetitive. |
| 01:54 | 7  | THE COURT:  Oh, take your time. |
| 01:54 | 8  | MR. WIECHERT:  All right.  Well, I'll still try |
|       | 9  | not to be repetitive for everyone's sake. |
| 01:54 | 10 | **DEFENSE ARGUMENT** |
| 01:54 | 11 | MR. WIECHERT:  We start with the language "high |
|       | 12 | seas."  And in any manner of statutory interpretation, you |
|       | 13 | begin with those words.  That noun, "seas," has an -- has a |
|       | 14 | meaning even more ancient than the 1800 Supreme Court cases |
|       | 15 | that we were reading or the English precedent that those |
|       | 16 | cases were based on. |
| 01:54 | 17 | The original seven seas included the North and |
|       | 18 | South Atlantic, the North and South Pacific; and the |
|       | 19 | Atlantic includes the Caribbean and the Gulf of Mexico, and |
|       | 20 | the Arctic Ocean.  Basically the seas, as understood at the |
|       | 21 | time that the Constitution was drafted, included all the |
|       | 22 | contiguous waters that go around the coast of United States. |
| 01:55 | 23 | THE COURT:  If I was an "originalist," that would |
|       | 24 | be very interesting.  But just assume Congress recognized, |
|       | 25 | when we got speed boats instead of sailboats -- |

8:20-CR-00002-DOC - 3/3/2021 - Item Number 2

24

| | | |
|---|---|---|
| 01:55 | 1 | MR. WIECHERT:  As well -- |
| 01:55 | 2 | THE COURT:  -- that they weren't too worried any |
| | 3 | longer about the state having sole and exclusive |
| | 4 | jurisdiction up to 3 miles; that they recognized lots of |
| | 5 | narcotics were coming in; and that they tried to change that |
| | 6 | under AEDPA and 901.  And they started to recognize |
| | 7 | different jurisdiction is important -- especially, the |
| | 8 | narcotics dealer -- because you got high-speed boats, |
| | 9 | et cetera, and they weren't going to leave that to some |
| | 10 | podunk state in a rowboat to apprehend these narcotics |
| | 11 | traffickers -- |
| 01:55 | 12 | MR. WIECHERT:  And -- and -- |
| 01:55 | 13 | *(Simultaneous speaking.)* |
| 01:55 | 14 | THE COURT:  -- Congress has been pushing for quite |
| | 15 | a while, regardless of the original intent of the sailing |
| | 16 | ships long ago in jurisprudence, to get this congruent |
| | 17 | jurisdiction in both the state and feds pushing in.  And the |
| | 18 | dis-marcation of 3 miles isn't very relevant. |
| 01:56 | 19 | MR. WIECHERT:  Right. |
| 01:56 | 20 | THE COURT:  I may be wrong so I toss that back to |
| | 21 | you, Mr. Wiechert. |
| 01:56 | 22 | MR. WIECHERT:  So -- and I will address the |
| | 23 | Court's speedboat, fast boat concerns in a couple of |
| | 24 | minutes -- having watched basically every episode of |
| | 25 | *Miami Vice*, starting in 1984. |

8:20-CR-00002-DOC - 3/3/2021 - Item Number 2

25

01:56　1　　　　　So we start with "seas" and then we have an

　　　2　adjective.  And the adjective is "high."  And the question

　　　3　is, *Did Congress put that language in there as -- as*

　　　4　*something substantive?*  Because as a matter of statutory

　　　5　construction, you typically don't ignore words that are part

　　　6　of the statute.

01:56　7　　　　　Not all portions of the seas qualify as the "high

　　　8　seas"; otherwise, the term, in and of itself, is redundant.

　　　9　You don't need to put in the term "high"; you just say the

　　10　seas.

01:57　11　　　　　THE COURT:  How do you --

01:57　12　　　　　MR. WIECHERT:  And --

01:57　13　　　　　THE COURT:  -- with the *Miller* case?

01:57　14　　　　　MR. WIECHERT:  I'm sorry?

01:57　15　　　　　THE COURT:  How do you deal with the *Miller* case?

01:57　16　　　　　MR. WIECHERT:  The *Miller* case, as Mr. Wilke

　　17　points out, is -- is one that's just -- is distinguishable

　　18　because it predated this statute that we're dealing with,

　　19　7(1), and doesn't include the language that we think is --

　　20　is determinative here, and the clause that's going to be

　　21　determinative.

01:57　22　　　　　If -- we're not dealing with the "high seas."

　　23　We're dealing with territorial waters that, even if they're

　　24　within the maritime or admiralty jurisdiction of the

　　25　United States, they're also within the undisputed

Case 8:20-cr-00002-DOC    Document 196    Filed 06/30/21    Page 26 of 51    Page ID #:1037
8:20-CR-00002-DOC - 3/3/2021 - Item Number 2

26

|       |    |                                                              |
|-------|----|--------------------------------------------------------------|
|       | 1  | jurisdiction of the State of California.                     |
| 01:57 | 2  | THE COURT:  But --                                           |
| 01:57 | 3  | MR. WIECHERT:  And that was not --                           |
| 01:57 | 4  | *(Simultaneous speaking.)*                                   |
| 01:57 | 5  | THE COURT:  -- so there the Court is very                    |
|       | 6  | explicit.  And it gets back to the thought that this Court's |
|       | 7  | had; and that is the idea that there isn't merit in the      |
|       | 8  | argument because that old thought that the State of          |
|       | 9  | California has exclusive jurisdiction of crimes committed    |
|       | 10 | within its limits and that, in the federal criminal          |
|       | 11 | statutes, this phrase "high seas" seems to be construed by   |
|       | 12 | Congress to include only the unenclosed waters of the ocean  |
|       | 13 | extending outside the boundary of the state.  And that's     |
|       | 14 | been rejected.                                               |
| 01:58 | 15 | So it seems to me that California's authority over           |
|       | 16 | crimes, um, isn't defined in the way that you're arguing to  |
|       | 17 | the Court.  But I could certainly be wrong on that.          |
| 01:58 | 18 | MR. WILKE:  Could I say something?                           |
| 01:58 | 19 | THE COURT:  No.  I'm listening to Mr. Wiechert               |
|       | 20 | now.  Thank you.  I don't mean to be rude, but I don't       |
|       | 21 | appreciate one counsel jumping in to rescue the other.  This |
|       | 22 | is Mr. Wiechert's argument.  And I've indicated to you,      |
|       | 23 | Mr. Wilke, you'll have plenty of time.  I promise you.       |
| 01:58 | 24 | I'll be courteous to --                                      |
| 01:58 | 25 | MR. WIECHERT:  No problem, Your Honor.                       |

01:58  1        *(Simultaneous speaking.)*

01:58  2            THE COURT:  No.  You're not going to intercede in

       3   this now.

01:58  4            Mr. Wilke -- or --

01:58  5            MR. WIECHERT:  So anyway, we shouldn't be

       6   interpreting the statute without taking the words out of the

       7   statute.  In this case, the word "high" out of the statute.

01:59  8            We've just undergone two recent Presidential

       9   impeachments that have focused on a phrase that now, pretty

      10   much most of the population knows, which is "high crimes and

      11   misdemeanors."  And the constitutional scholars that have

      12   tried to interpret that phrase have done it in various ways,

      13   but none of them say we need to disregard the word "high."

01:59 14            Some of them say we should use "high" in terms of

      15   the nature of the official involved; others say "high" means

      16   seriousness of the offense.  But in either case, and however

      17   the interpretation is, nobody says because the word "high"

      18   is included in "high crimes and misdemeanors" that we should

      19   totally disregard it.

01:59 20            THE COURT:  And, Mr. Wiechert, why am I to decide

      21   this now?  Why, in your opinion -- I have no factual record

      22   concerning where this alleged homicide took place.

02:00 23            This does appear to me to be a Rule -- I'm going

      24   to listen to the arguments today.  But, tentatively, coming

      25   in, I almost thought about short-circuiting this.  And I

1   don't wanna do that; it's a good preview for me.  But I

2   think this is a Rule 29.

02:00   3            MR. WIECHERT:  So the Courts have -- and -- and

4   the Court has cited situations where the Ninth Circuit has

5   said, *District Court Judge, you shoulda let this go to the*

6   *jury.  This is the situation where the jury has to make*

7   *those facts.  We don't have a motion to dismiss.  Let the*

8   *government put on its case.*

02:00   9            And I -- I -- I understand where the Court is

10  coming from.  And what I don't understand, kind of, is where

11  the government is coming from.  Because --

02:00   12           THE COURT:  Well, here's their concern.  They

13  won't say it.  But, you know, if I rule against them,

14  jeopardy's attached.  They --

02:00   15           MR. WIECHERT:  Right.

02:00   16           THE COURT:  -- get to a Rule 29, and that's why

17  with -- why -- that's why -- the government's excellent

18  counsel.  And what they said was, *Judge, we don't think you*

19  *should decide this now, but please give us an indication* --

20  which I'm not going to do because, if I do decide it's a

21  Rule 29, we haven't had a fair discussion over what that

22  instruction should look like, and I don't have a good

23  factual basis to make that decision.

02:01   24           So with no chiding of the government:  It's two

25  ends against the middle; and that is, *Judge, don't decide it*

|       |    |                                                                    |
|-------|----|--------------------------------------------------------------------|
|       | 1  | *now, but please give us an indication, because if we proceed*     |
|       | 2  | *down this road and you rule against us on Rule 29, and you*        |
|       | 3  | *find at that time that we don't have jurisdiction,*                |
|       | 4  | *jeopardy's attached.*  You're done.                                |
| 02:01 | 5  | Now the government makes a great argument also and                 |
|       | 6  | that is, *Look, Judge, this would be ridiculous.  First of*         |
|       | 7  | *all, how do we know its 2.9 miles or 3.1?  And if you took*        |
|       | 8  | *the defense position, without a factual basis, you know, how*      |
|       | 9  | *would we ever -- if we ever got close to the 3-mile*               |
|       | 10 | *marker -- ever get a determination?*                               |
| 02:01 | 11 | And that's why the *Miller* case isn't dispositive,                |
|       | 12 | but it does seem that Congress is trying to wiggle out of           |
|       | 13 | this old sailing ship box of "3 miles," and then later on           |
|       | 14 | "3 miles to 12 miles" with the narcotics trade and the fast         |
|       | 15 | boats, *et cetera*, Panga boats.                                    |
| 02:02 | 16 | They -- they got involved, I think, in -- in an                    |
|       | 17 | area where they started to recognize that the feds had to           |
|       | 18 | come in with their sophisticated equipment because a lot of         |
|       | 19 | these cases, including Florida in the early years, just             |
|       | 20 | didn't have the "state" ability to keep up with the                 |
|       | 21 | sophistication of the narcotics trade.  So Congress, for a          |
|       | 22 | long time, from the government's perspective -- whether it's        |
|       | 23 | AEDPA or 901 -- has been attempting to say, *You know what?*        |
|       | 24 | *This is a joint jurisdictional problem, even within this*          |
|       | 25 | *3 mile limit.  And we're not gonna worry too much about*           |

|         |    |                                                                    |
|---------|----|--------------------------------------------------------------------|
|         | 1  | *this -- that, because of the speed of these boats traveling*      |
|         | 2  | *in and out at high rates.*  And the states just didn't have       |
|         | 3  | the capability...                                                  |
| 02:02   | 4  | Now, Congress may have the right to do that.  I                    |
|         | 5  | haven't decided those issues yet, but I'm --                       |
| 02:02   | 6  | MR. WIECHERT:  Yeah.                                               |
| 02:02   | 7  | THE COURT:  I know, I talked to the government.                    |
|         | 8  | I'm not -- it's not gonna be two ends against the middle.          |
|         | 9  | It's going to be, I either have the ability to make the            |
|         | 10 | decision now -- but I'm not gonna go through jury                  |
|         | 11 | instructions and give them an indication now.  There's no          |
|         | 12 | record for that.  You haven't had a fighting chance to talk        |
|         | 13 | about these instructions.                                         |
| 02:03   | 14 | Now, I'm sorry, Mr. Wiechert.  Please.                             |
| 02:03   | 15 | MR. WIECHERT:  That's all right, Your Honor.                       |
| 02:03   | 16 | And so I -- I'm -- I'm gonna segue my *Miami Vice*                 |
|         | 17 | days and kinda cover the whole notion of expanding the scope       |
|         | 18 | of -- of the enforcement efforts that the government can           |
|         | 19 | take.                                                              |
| 02:03   | 20 | The government doesn't use -- doesn't need                         |
|         | 21 | admiralty or maritime jurisdiction to interdict drugs coming       |
|         | 22 | into the United States.  They do not base their -- their           |
|         | 23 | (A), um -- their Title 21 statutes on -- on that type of           |
|         | 24 | jurisdiction.                                                      |
| 02:03   | 25 | Title 21 statutes are based on the commerce                        |

Case 8:20-cr-00002-DOC    Document 196    Filed 06/30/21    Page 31 of 51    Page ID #:1042
8:20-CR-00002-DOC  -  3/3/2021 - Item Number 2

31

|  | 1 | clause.  And if someone is bringing in dope into the |
|---|---|---|
|  | 2 | United States, it doesn't matter whether or not that dope is |
|  | 3 | interdicted on the beach or that dope is interdicted 3 miles |
|  | 4 | out or that dope is inter- -- or 10 miles out.  They still |
|  | 5 | have statutes -- narcotic statutes that are going to apply |
|  | 6 | that are solely apart from whether or not there's a juris- |
|  | 7 | (audio interference) basis. |
| 02:04 | 8 | What they're trying to do here is basically create |
|  | 9 | a federal crime of murder.  And there is no federal crime of |
|  | 10 | murder, unless it's connected with something.  And it can be |
|  | 11 | connected with a narcotics transaction. |
| 02:04 | 12 | THE COURT:  Just a moment. |
| 02:04 | 13 | What happens if the hom- -- if this is a homicide |
|  | 14 | and it occurred 3.1 miles? |
| 02:04 | 15 | MR. WIECHERT:  If this is a homicide that |
|  | 16 | occurs -- |
| 02:04 | 17 | *(Simultaneous speaking.)* |
| 02:04 | 18 | THE COURT:  -- offshore, yeah. |
| 02:04 | 19 | MR. WIECHERT:  If this is a homicide that occurs |
|  | 20 | 3.1 miles outside and it's within the territorial |
|  | 21 | jurisdiction of the United States, it's -- it's |
|  | 22 | prosecutable.  Our position -- |
| 02:04 | 23 | *(Simultaneous speaking.)* |
| 02:04 | 24 | THE COURT:  Where's my factual basis to decide |
|  | 25 | that right now?  Because this seems anticipatory. |

02:04    1              MR. WIECHERT:  So that --

02:04    2              THE COURT:  There's no stip --

02:04    3              MR. WIECHERT:  That -- that --

02:04    4              THE COURT:  Okay.  We'll --

02:04    5          *(Simultaneous speaking.)*

02:04    6          *(Court reporter requests clarification for the*

         7      *record.)*

02:04    8              THE COURT:  Okay.

02:04    9              MR. WIECHERT:  That is an excellent question.  And

         10    I'm not trying to, you know, to -- to -- to curry favor with

         11    you, but that's an excellent question.

02:05    12             So I try'a put myself in Mr. Scally and

         13    Mr. Mittal's shoes.  Because I would be very fearful of the

         14    scenario the Court has posed, which is the Court decides

         15    that it's up to 3 miles, and they get before the jury and

         16    they can't show that the crime occurred with -- outside that

         17    three mile -- that three-mile area, and then there's a

         18    Rule 29 motion and double jeopardy sets in, and case's over

         19    for good, forever.

02:05    20             And so if I'm them, I say, *I will stipulate for*

         21    *purposes of this hearing that we cannot show where that*

         22    *murder occurred.*  Because based on the discovery, they can't

         23    show where that murder occurred.

02:05    24             They know where the -- the "victim" -- and I use

         25    that term now, but later on we'll have a motion as to

Case 8:20-cr-00002-DOC    Document 196    Filed 06/30/21    Page 33 of 51    Page ID
#:1044
8:20-CR-00002-DOC - 3/3/2021 - Item Number 2

33

|   |   |
|---|---|
| | 1 |
| | 2 |
| | 3 |
| | 4 |
| | 5 |
| | 6 |
| 02:06 | 7 |
| 02:06 | 8 |

1    whether or not it's the proper term.  They know the victim

2    got on a boat in Dana Point Harbor at a certain time on the

3    morning October 15th, left the harbor; and then, when the

4    boat came back, he wasn't on the boat.  And a number of

5    hours later the body is found in the ocean off the coast of

6    California.

02:06   7         THE COURT:  Now, just a moment, Mr. Wiechert.

02:06   8         And that's part of Mr. Scally's argument.  When he

9    comes -- when you look at his papers, he's saying that's an

10   impossible situation, just from a practical viewpoint, for

11   the government; and it -- that is, because if the homicide

12   occurs, let's say, with -- 2.9 miles out *(audio*

13   *interference)* successful prosecution by the state or the

14   federal government under that fact situation.

02:07   15        MR. WIECHERT:  Uh, so there are situations --

02:07   16        THE COURT:  And so, therefore, that jurisdictional

17   issue, where we don't have a clear record or even a

18   stipulation, leads to impossibility.  And I can't imagine

19   that Congress ever intended -- and I think they're trying to

20   get out of a box, quite frankly, with AEDPA and 901 -- and I

21   think that the more modern jurisprudence seems to lend

22   itself to the feds recognizing that there has to be some

23   concurrency in that 3-mile area that historically, you

24   argue, belongs to the states.

02:07   25        You're arguing either/or:  It has to be three

8:20-CR-00002-DOC - 3/3/2021 - Item Number 2

34

|        |    |                                                                    |
|--------|----|--------------------------------------------------------------------|
|        | 1  | miles, state; three miles out, feds.                               |
| 02:07  | 2  | I don't know that.  And I'm probably not gonna                     |
|        | 3  | decide that.  But you're right:  The government's taking a          |
|        | 4  | chance.  If I decide against them on a Rule 29, jeopardy's          |
|        | 5  | attached.  They're done.                                           |
| 02:08  | 6  | MR. WIECHERT:  And -- and the argument that                        |
|        | 7  | because it's uncertain under these circumstances which             |
|        | 8  | jurisdiction you're in, that -- that dilemma was created by        |
|        | 9  | Congress.  Congress put in the lang- --                            |
| 02:08  | 10 | *(Simultaneous speaking.)*                                         |
| 02:08  | 11 | THE COURT:  -- determination.  Judge Pregerson                     |
|        | 12 | warns us about that in *Mejic* (phonetic), for goodness sakes,     |
|        | 13 | uh -- who was the Court?  Judge Lynch handed down a ruling          |
|        | 14 | from the Northern District.  But the senior judge was Skopil       |
|        | 15 | at the time, who wrote the opinion, reversed and remanded.          |
|        | 16 | And it was clear in so much of our jurisprudence that this          |
|        | 17 | was supposed to be a jury determination.  I'm supposed to          |
|        | 18 | instruct appropriately if we get there.                            |
| 02:08  | 19 | MR. WIECHERT:  It -- your Honor, if you asked the                  |
|        | 20 | government, *Can you prove where this murder took place?*           |
|        | 21 | Their honest answer's gonna be, *No, we can't.*  And -- and        |
|        | 22 | that is why they raised the argument that *(audio*                 |
|        | 23 | *interference)* what jurisdiction is involved that -- that          |
|        | 24 | perhaps a murder takes place and the perpetrators are not          |
|        | 25 | being -- able to be --                                             |

02:09   1          THE COURT:  So -- so --

02:09   2      *(Simultaneous speaking.)*

02:09   3          THE COURT:  So does that mean, if this murder

        4   occurs four miles out at sea, and the government's not quite

        5   certain of that, it shouldn't bring the prosecution?

        6   Because, you're right, nobody's ever gonna quite know

        7   whether it -- maybe it's 2.8 or 3.2 miles.

02:09   8          MR. WIECHERT:  And in this circumstances, you

        9   don't?  And if --

02:09  10          THE COURT:  Well, then --

02:09  11      *(Simultaneous speaking.)*

02:09  12          THE COURT:  -- only the state with that argument

       13   could bring this prosecution.  The government would have to

       14   walk away.  And if they're wrong, then the person who's

       15   committed the homicide, in a sense, because of this

       16   jurisdictional issue, is never prosecuted because the

       17   state -- if this was in front of a state judge right now,

       18   you can imagine the consternation because that state judge

       19   might be looking at your argument of 3 miles and saying, *Oh,*

       20   *gee, if it's 3.2, do you mean I don't have jurisdiction?*

02:09  21          MR. WIECHERT:  So I don't believe that the

       22   government can test [sic] -- or it is even contestable that

       23   an element of this offense is where this crime took place.

       24   And that needs to be proven beyond a reasonable doubt.

02:10  25          THE COURT:  And why --

8:20-CR-00002-DOC - 3/3/2021 - Item Number 2

36

| 02:10 | 1 | MR. WIECHERT:  It's -- it's -- |
| 02:10 | 2 | *(Simultaneous speaking.)* |
| 02:10 | 3 | *(Court reporter requests clarification for the* |
|  | 4 | *record.)* |
| 02:10 | 5 | THE COURT:  Why isn't that a jury determination, |
|  | 6 | as Judge Pregerson said, as Judge Skopil said.  The courts |
|  | 7 | are constantly -- in fact, we get reversed by not submitting |
|  | 8 | it to a jury. |
| 02:10 | 9 | MR. WIECHERT:  Yes.  And -- and -- and so, again, |
|  | 10 | going back to where the government is, I would think that |
|  | 11 | when the Court -- if the Court adopts the position that the |
|  | 12 | defense is right here, and that the "high seas" commence at |
|  | 13 | least three miles, if not twelve miles, out, um, and that if |
|  | 14 | the crime occurred within the first three miles off the |
|  | 15 | shore, the government has -- has no jurisdiction to |
|  | 16 | prosecute that crime; that, if that's the Court's decision, |
|  | 17 | that the government would want to take that up and have a |
|  | 18 | higher court rule on whether or not that is the right |
|  | 19 | decision before the case went to the jury on that |
|  | 20 | instruction and never gets to the Ninth Circuit. |
| 02:11 | 21 | THE COURT:  I -- |
| 02:11 | 22 | MR. WIECHERT:  -- because the -- |
| 02:11 | 23 | THE COURT:  -- I am anticipating that this is |
|  | 24 | premature on both the government's part and your part. |
| 02:11 | 25 | All right.  I'm going to turn to the government. |

Case 8:20-cr-00002-DOC   Document 196   Filed 06/30/21   Page 37 of 51   Page ID #:1048
8:20-CR-00002-DOC - 3/3/2021 - Item Number 2

37

|       |    |                                                              |
|-------|----|--------------------------------------------------------------|
|       | 1  | Mr. Wiechert, I promise you I'll be back to you.             |
| 02:11 | 2  | MR. WIECHERT:  Thank you.                                    |
| 02:11 | 3  | THE COURT:  Mr. Scally.                                      |
| 02:11 | 4  | MR. SCALLY:  Yes, Your Honor.  Thank you.                    |
| 02:11 | 5  | **GOVERNMENT'S ARGUMENT**                                    |
| 02:11 | 6  | MR. SCALLY:  On that specific issue, the                     |
|       | 7  | government's position is that the rubric under which to      |
|       | 8  | analysis -- an- -- analyze this issue at this point isn't    |
|       | 9  | Rule 12(b), but that we're at the first part of the          |
|       | 10 | bifurcated inquiry that the Ninth Circuit lays out in the    |
|       | 11 | *Smith* case cited on page 5 of the government's, um,        |
|       | 12 | opposition.                                                  |
| 02:11 | 13 | So in these cases where federal jurisdiction is an           |
|       | 14 | element of the crime, the Ninth Circuit has said the        |
|       | 15 | appropriate, uh -- the jurisdictional element requires a     |
|       | 16 | bifurcated inquiry.                                          |
| 02:12 | 17 | The first part of that inquiry is whether the               |
|       | 18 | United States --                                             |
| 02:12 | 19 | THE COURT:  I don't have any evidence of that.              |
|       | 20 | That's what I keep pointing to, Mr. Scally.  I have no idea  |
|       | 21 | from this record, no testimony.  And so I'm very concerned   |
|       | 22 | that I would be making a ruling at this point, quite         |
|       | 23 | frankly.                                                     |
| 02:12 | 24 | MR. SCALLY:  Well, let me -- so the two -- it's             |
|       | 25 | the second part of that bifurcated inquiry that you don't    |

1    have any evidence of, Your Honor.  And that -- because

2    that's an issue for the trier of fact.  So the -- the first

3    part of the bifurcated inquiry is whether the United States

4    exercises jurisdiction over the area where the murder is

5    alleged to've occurred.  And here, you can tell from our

6    proposed jury instruction, we're alleging that it occurred

7    within -- within 12 miles of shore.  And so --

02:13    8            THE COURT:  How do you know that?

02:13    9            MR. SCALLY:  We have --

02:13    10            THE COURT:  In other words, the same issue that we

11    have over the "3-to-12-mile" or the "0-to-3-mile" -- we have

12    12 miles.  Now, as a practical matter, it may not make a

13    difference at -- over 12 miles.

02:13    14            But how do you know?

02:13    15            MR. SCALLY:  We have -- we have phone location

16    data, Your Honor, that -- that puts, uh -- puts the phones

17    used by the individuals involved in this case, uh, at

18    approximately 3 miles from shore.

02:13    19            THE COURT:  Okay.  Now, hold on.

02:13    20            This is the first time I've heard that.  In other

21    words, nowhere in any of the papers was that clear to the

22    Court until you just made that statement.

02:13    23            So the problem becomes:  It could be 2.8,

24    hypothetically, 3.2 -- you've got a general range out

25    there --

02:14    1              MR. SCALLY:  Right.

02:14    2              THE COURT:  -- jury determination.

02:14    3              MR. SCALLY:  Right.  Your Honor, the -- the

         4    portion of where -- whether the offense took place within a

         5    location that the Court has determined, uh, the

         6    United State -- States exercises jurisdiction, that is the

         7    second part of the bifurcated inquiry; that is the jury

         8    determination.

02:14    9              Whether it occurred -- but -- but, um, basically

         10   what the Court says in *Smith*, is whether the United States

         11   exercises jurisdiction over the area where the murder is

         12   alleged to've occurred -- this is quoting the case:

02:14    13                 "-- can and should be decided by the

         14                 trial court as a preliminary question of

         15                 law."

02:14    16             THE COURT:  Now turn to page 3.  (Reading:)

02:14    17                 "Should be denied because it cannot be

         18                 decided without a trial on the merits."

02:14    19             It's (12)(b).  You start off with that heading on

         20   page 3.  And I'm going to read to you:

02:14    21                 "However, such a motion is premature.

         22                 Rule 29 would be the proper vehicle,

         23                 *et cetera*."

02:15    24             MR. SCALLY:  Well --

02:15    25         *(Simultaneous speaking.)*

02:15    1          THE COURT:  What you really want me -- is -- is to

         2  give you a tip and not put you in the position of getting

         3  caught in jeopardy, if I rule against you.  I think this is

         4  proper Rule 29.  I think this is premature.

02:15    5          MR. SCALLY:  Your Honor, we could've been clearer

         6  in our papers.  I grant that.

02:15    7          THE COURT:  You were very clear.  You're

         8  excellent.  You were absolutely clear.  I just read to you.

         9  That's how clear you were.

02:15   10          MR. SCALLY:  Well --

02:15   11          THE COURT:  Read again how clear you were?

02:15   12           "However, such a motion is premature.

        13           Rule 12(b) is for a motion that can be

        14           decided without trial on the merits.

        15           Rule 29 would be the proper vehicle for

        16           defendants' motion because the jury will

        17           have to hear evidence about where the

        18           murder took place and determine the

        19           location.  The (12)(b) motion should be

        20           denied because it not -- can be --

        21           cannot be decided," *et cetera*.

02:15   22          And then you go on with, *Judge, give us a tip

        23  because -- please decide it.  And not only that, tell the

        24  defense what the jury instruction's going to be at this

        25  time.*

Case 8:20-cr-00002-DOC    Document 196    Filed 06/30/21    Page 41 of 51    Page ID
#:1052
8:20-CR-00002-DOC  -  3/3/2021 - Item Number 2

41

02:15    1            Now, I'm not chiding you for that.  But I'm saying

         2    we haven't even discussed the jury instruction with the

         3    defense.

02:16    4            MR. SCALLY:  Your -- Your Honor, I think that -- I

         5    think that that bifurcated inquiry is something that can be

         6    done and is consistent with the position the government

         7    took -- that we took in -- in the papers, which is, um,

         8    that, at this point, a -- a, uh -- a ruling by this Court as

         9    a preliminary question of law on the issue of whether the

        10    United States exercises jurisdiction over that 12-mile band,

        11    that -- that is -- is a ruling that this Court can make.

02:16   12            THE COURT:  I can.  I don't have to, Counsel.

        13    It's discretionary.  I want that very clear.  And I'm about

        14    to use my discretion.  Can you guess what that might be?

02:16   15            MR. SCALLY:  You're not going to issue that

        16    ruling, Your Honor.

02:16   17            THE COURT:  Amazingly how smart you are.

02:16   18            I'm going to let each of you anticipate that at a

        19    Rule 29.  And you can let jeopardy attach, and the jury can

        20    decide this.  And I'll get further jurisprudence.

02:17   21            Now I want to be polite to Mr. Wilke in a moment,

        22    and I want you to finish your argument and be polite; but

        23    tentatively, I think that this is anticipatory.  I don't

        24    have enough facts in front of me and I think I'm just going

        25    to let each of you put yourself in that position of, uh --

|       |    |                                                            |
|-------|----|------------------------------------------------------------|
|       | 1  | of deciding 'cause you, at least, have the evidence.       |
| 02:17 | 2  | And up until your statement, Mr. Scally, I had no          |
|       | 3  | idea where this occurred.  I didn't know if it was         |
|       | 4  | eight miles.  I didn't know you even had a vector on this, |
|       | 5  | frankly, so --                                             |
| 02:17 | 6  | MR. SCALLY:  Well --                                       |
| 02:17 | 7  | *(Simultaneous speaking.)*                                 |
| 02:17 | 8  | THE COURT:  -- so you're satisfied.  Then I want           |
|       | 9  | to be courteous to Mr. Wilke so he's got a record.  And then |
|       | 10 | you can both anticipate that the Court's not gonna make a  |
|       | 11 | ruling.  I'm probably gonna deny the 12(b) without getting |
|       | 12 | to the merits and leaving this for Rule 29.                |
| 02:17 | 13 | Counsel, Mr. Scally.                                        |
| 02:17 | 14 | MR. SCALLY:  Well, Your Honor, I guess the                 |
|       | 15 | reason -- the reason, uh, we didn't provide the factual    |
|       | 16 | information in the papers, um, was because we were -- I     |
|       | 17 | wasn't clear that the Court would even need that information |
|       | 18 | to make that legal ruling, the legal determination as to   |
|       | 19 | whether the special maritime and territorial jurisdiction of |
|       | 20 | the United States includes that 12-mile band off the coast. |
| 02:18 | 21 | Um, I think that is appropriately reserved to the          |
|       | 22 | trier of fact, um, and so -- so, you know.  And -- and it  |
|       | 23 | may have been that we should've responded to the motion to |
|       | 24 | dismiss with an affirmative motion of our own requesting   |
|       | 25 | that legal ruling.  Um, because I think that's what we would |

Case 8:20-cr-00002-DOC    Document 196    Filed 06/30/21    Page 43 of 51    Page ID #:1054
8:20-CR-00002-DOC  -  3/3/2021 - Item Number 2

43

|       |    |                                                                       |
|-------|----|-----------------------------------------------------------------------|
|       | 1  | typically do had -- had this motion not come in from, uh,             |
|       | 2  | Mr. Wilke and Mr. Wiechert.  In anticipation of trial, we            |
|       | 3  | would -- we would be bringing that affirmative motion               |
|       | 4  | requesting that legal ruling ahead of trial.                        |
| 02:18 | 5  | THE COURT:  And I would still have discretion,                      |
|       | 6  | wouldn't I, Mr. Scally?                                             |
| 02:18 | 7  | MR. SCALLY:  Oh, absolutely, Your Honor.  I mean,                   |
|       | 8  | certainly it's a timing -- timing issue and that sorta             |
|       | 9  | thing.  Absolutely.                                                 |
| 02:19 | 10 | THE COURT:  And a cautious court would want a much                  |
|       | 11 | better record.                                                      |
| 02:19 | 12 | MR. SCALLY:  I'm sorry, Your Honor?                                 |
| 02:19 | 13 | THE COURT:  A cautious Court would want a much                      |
|       | 14 | better record.  And I also would heed the number of times         |
|       | 15 | that my colleagues have been overturned by not submitting         |
|       | 16 | this to a jury.                                                     |
| 02:19 | 17 | MR. SCALLY:  Well, Your Honor, respectfully,                        |
|       | 18 | the -- the portion --                                               |
| 02:19 | 19 | THE COURT:  "Respectfully" doesn't mean respect at                 |
|       | 20 | all, so don't use that term.                                       |
| 02:19 | 21 | MR. SCALLY:  Understood, Your Honor.                               |
| 02:19 | 22 | THE COURT:  Okay.                                                   |
| 02:19 | 23 | MR. SCALLY:  The, um -- the portion that needs to                  |
|       | 24 | be, um, submitted to the jury is that second part of the          |
|       | 25 | bifurcated inquiry.  It's the -- whether, uh -- whether the        |

8:20-CR-00002-DOC - 3/3/2021 - Item Number 2

44

| | | |
|---|---|---|
| | 1 | murder took place within that location that the Court has |
| | 2 | already determined is subject -- is part of the special |
| | 3 | maritime and territorial jurisdiction of the United States. |
| 02:19 | 4 | So, um, I don't think the Court needs, um -- and I |
| | 5 | could be mistaken, but I don't think the Court does -- does |
| | 6 | need a particular, uh -- a significant factual record to |
| | 7 | make the legal determination considering, uh -- determining |
| | 8 | whether the United States exercises jurisdiction over a |
| | 9 | particular area.  And that would be -- and I understand the |
| | 10 | Court's not gonna make that ruling -- but that would be the, |
| | 11 | um, the portion -- that first part'a the bifurcated inquiry |
| | 12 | that we would be -- we would be -- uh, I -- I'm submitting, |
| | 13 | um... |
| 02:20 | 14 | THE COURT:  Thank you very much, Mr. Scally. |
| 02:20 | 15 | Mr. Wilke, this will be brief now. |
| 02:20 | 16 | MR. WILKE:  I wanted to respond to a few of the |
| | 17 | Courts -- |
| 02:20 | 18 | THE COURT:  This will be brief. |
| 02:20 | 19 | **DEFENSE RESPONSE** |
| 02:20 | 20 | MR. WILKE:  The Court's notation of the narcotics |
| | 21 | cases (inaudible) -- |
| 02:20 | 22 | *(Court reporter requests clarification for the* |
| | 23 | *record.)* |
| 02:20 | 24 | MR. WILKE:  Thank you. I'll speak up. |
| 02:20 | 25 | The Court's reliance or suggestion that the |

8:20-CR-00002-DOC - 3/3/2021 - Item Number 2

45

narcotics case on the Panga boat cases, which held that this

was a jury determination, uh, I would note that, again, the

7(1) issue is not before the Court.  There, 7(1) -- um,

Congress doesn't rely on 7(1) jurisdiction for, uh,

narcotics cases, so I think those are very different.

02:21    On the issue of, um, whether this is a pretrial

issue or an issue for trial, Your Honor, the purpose -- as

the Court is aware, the purpose of an Indictment is to

afford the defendant fair notice of what he must defend

against.  The problem we have here at this stage is we don't

know whether the government has to prove that it happened

within three miles from shore.

02:21    We, of course, think we're right about the law --

and they should -- but without a pretrial ruling on this

issue, we're basically denied our right to notice on that

issue.  So, uh, that that is -- to me, that is the issue

here and why it is ripe for a pretrial ruling.

02:21    The Court need -- need not -- we're not asking the

Court to decide whether the government can prove it happened

within three miles from shore, only that the government --

we're asking the Court to rule that the government must

prove that it happened outside of three miles from shore.

02:22    And under the current language of the First

Superseding Indictment, it doesn't compel that.  The

language is too broad in that it would encompass oceans

| | |
|---|---|
| 1 | waters within 3 miles from shore.  And the breadth of the |
| 2 | language in the Indictment is -- is what renders the |
| 3 | Indictment deficient and why the Court has a basis to |
| 4 | dismiss the Indictment at this stage. |
| 02:22  5 | The -- finally, the one last point I would make, |
| 6 | Your Honor:  There's been the suggestion that the defense |
| 7 | interpretation of the statute would put the government in |
| 8 | this impossible situation because there would be |
| 9 | drying [sic] lines:  A line a three miles.  And maybe if it |
| 10 | happened at 2.9 or 3.1., the government might not ever be |
| 11 | able to prove this.  But it -- that -- that argument applies |
| 12 | no matter how the Court interprets the statute. |
| 02:23  13 | Under the government's own interpretation, they |
| 14 | are saying that -- that the federal jurisdiction begins at |
| 15 | the low tide mark.  The low tide mark, it varies along the |
| 16 | coast.  You're gonna have this very nebulous boundary, |
| 17 | whether it's there or whether it's at three miles offshore. |
| 02:23  18 | The government faces the same types of juris- -- |
| 19 | of evidentiary issues in any jurisdictional issue.  If |
| 20 | somebody goes in, commits a crime right at the border of |
| 21 | California and Arizona, you have the same situation. |
| 02:23  22 | We had this situation just recently before the |
| 23 | Supreme Court, where the Supreme Court invalidated a whole |
| 24 | series of state convictions out of Oklahoma after |
| 25 | determining that those were actually committed on, um, |

|       |    |                                                             |
|-------|----|-------------------------------------------------------------|
|       | 1  | federal Indian land.                                        |
| 02:23 | 2  | So the government always has to prove                       |
|       | 3  | jurisdiction, Your Honor.  The fact that they may have      |
|       | 4  | difficulty proving it within certain situations isn't --    |
|       | 5  | isn't a basis to say they don't have to prove it.           |
| 02:24 | 6  | The government has -- is very creative in the ways           |
|       | 7  | it can collect evidence.  It has a lotta power to collect   |
|       | 8  | evidence.  Uh -- and, uh, so I don't think it is really fair |
|       | 9  | or proper for the Court to use the fact that the -- that    |
|       | 10 | this might be a difficult issue for the government to prove |
|       | 11 | in weighing its legal analysis.                             |
| 02:24 | 12 | I'd submit, Your Honor.                                      |
| 02:24 | 13 | THE COURT:  All right.  Thank you.                           |
| 02:24 | 14 | Mr. Wiechert.                                                |
| 02:24 | 15 | MR. WIECHERT:  Very briefly, Your Honor.                     |
| 02:24 | 16 | **DEFENSE RESPONSE**                                         |
| 02:24 | 17 | MR. WIECHERT:  I understand the 12 -- 12.1 cases,            |
|       | 18 | like, District Courts get reversed.  I believe this is a    |
|       | 19 | situation where the government would concede that it cannot |
|       | 20 | prove beyond a reasonable doubt that, um, they -- murder did |
|       | 21 | not take place outside three miles.  Given that, we can go  |
|       | 22 | and take the next step, which is, if the government can't   |
|       | 23 | prove that and if the Court's view of the Statute 7.1 [sic] |
|       | 24 | is the same as ours, um, there is no federal case.  The     |
|       | 25 | Court makes that ruling, it dismisses the Indictment, and it |

Case 8:20-cr-00002-DOC    Document 196    Filed 06/30/21    Page 48 of 51    Page ID #:1059
8:20-CR-00002-DOC - 3/3/2021 - Item Number 2

48

|       |    |                                                                    |
|-------|----|--------------------------------------------------------------------|
|       | 1  | goes up before the Ninth Circuit, before jeopardy attaches,       |
|       | 2  | and the Ninth Circuit says whether we're right or wrong.          |
| 02:25 | 3  | But I don't think there's a dispute here over the                |
|       | 4  | facts. And the facts are that the government cannot prove         |
|       | 5  | beyond a reasonable doubt that this murder took place             |
|       | 6  | outside three miles.                                              |
| 02:25 | 7  | THE COURT: Mr. Scally, are you prepared to                       |
|       | 8  | stipulate that the murder did not take place outside three       |
|       | 9  | miles?                                                            |
| 02:25 | 10 | MR. SCALLY: No, Your Honor. The facts that we                   |
|       | 11 | have don't allow me to make that stipulation at this time.       |
| 02:25 | 12 | THE COURT: My guess is you're gonna have some                   |
|       | 13 | proximate range, from what I'm hearing from you, but I -- I      |
|       | 14 | don't even have a good record of that. And it's gonna            |
|       | 15 | probably be a jury determination, if we get that far.            |
| 02:25 | 16 | Well, Mr. Scally, anything you'd like to add?                    |
| 02:25 | 17 | MR. SCALLY: Nothing further, Your Honor.                        |
| 02:25 | 18 | Thank you.                                                        |
| 02:25 | 19 | THE COURT: Well, first of all, I'm going to deny               |
|       | 20 | the Rule 12(b) but not on the merits at this time. This is       |
|       | 21 | going to be reserved for a Rule 29, which is the appropriate     |
|       | 22 | time for the Court to hear this, along with any appropriate      |
|       | 23 | jurisdictions. Also, the Court will then have a much better      |
|       | 24 | factual record and will be able to determine, after hearing      |
|       | 25 | evidence, whether, in fact, this is a -- "close to               |

|       |    |                                                               |
|-------|----|---------------------------------------------------------------|
|       | 1  | three-mile," outside, inside -- the Court hasn't even heard    |
|       | 2  | that evidence and wasn't even aware of this until today.       |
| 02:26 | 3  | I look forward to making that decision, though,               |
|       | 4  | and will happy to render this on the merits at the Rule 29     |
|       | 5  | and make the same decision you're calling upon me to make      |
|       | 6  | today, which I decline to do.  It's anticipatory and          |
|       | 7  | premature.                                                     |
| 02:26 | 8  | So the government now places yourself in jeopardy             |
|       | 9  | once you begin and, if the ruling goes against you, that      |
|       | 10 | will be dispositive, and the defense is left not quite        |
|       | 11 | knowing.  But, once again, I reiterate:  This is              |
|       | 12 | anticipatory, premature -- appreciated for the forewarning    |
|       | 13 | to the Court -- but this will be decided in Rule 29.          |
| 02:27 | 14 | Anything further, Counsel?                                     |
| 02:27 | 15 | MR. WILKE:  One point I would like to make is, I              |
|       | 16 | just wanna make sure I reserve for the record my              |
|       | 17 | constitutional objection to the government's position.  I     |
|       | 18 | don't think it's right to bring it now because the Court      |
|       | 19 | hasn't ruled.  But should the Court adopt the interpretation  |
|       | 20 | of the statute -- argued for [sic] the government -- at the   |
|       | 21 | Rule 29 level, at the jury instruction level, and -- and the  |
|       | 22 | defendants were convicted, we would preserve that issue by    |
|       | 23 | way of a post-trial motion.                                   |
| 02:27 | 24 | I just wanna -- I wanna make that record because I           |
|       | 25 | don't think --                                                |

Case 8:20-cr-00002-DOC   Document 196   Filed 06/30/21   Page 50 of 51   Page ID #:1061
8:20-CR-00002-DOC - 3/3/2021 - Item Number 2

50

| | | |
|---|---|---|
| 02:27 | 1 | THE COURT:  Of course. |
| 02:27 | 2 | *(Simultaneous speaking.)* |
| 02:27 | 3 | THE COURT:  -- it would be waived.  And, frankly, |
| | 4 | if I rule against you, Mr. Wilke, and if this goes to the |
| | 5 | jury, it would be a jury determination for them to make. |
| 02:27 | 6 | All right.  Thank you very much, Counsel. |
| 02:27 | 7 | MR. SCALLY:  Thank you, Your Honor. |
| 02:27 | 8 | MR. WILKE:  Thank you, Your Honor. |
| 02:27 | 9 | MR. WIECHERT:  Thank you, Your Honor. |
| 02:27 | 10 | *(Proceedings adjourned at 2:27 p.m.)* |
| 02:28 | 11 | -oOo- |
| 02:28 | 12 | |
| | 13 | |
| | 14 | |
| | 15 | |
| | 16 | |
| | 17 | |
| | 18 | |
| | 19 | |
| | 20 | |
| | 21 | |
| | 22 | |
| | 23 | |
| | 24 | |
| | 25 | |

```
02:28    1                          -oOo-

02:28    2

02:28    3                      CERTIFICATE

02:28    4

02:28    5          I hereby certify that pursuant to Section 753,

         6   Title 28, United States Code, the foregoing is a true and

         7   correct transcript of the stenographically reported audible

         8   proceedings held remotely via videoconference and/or

         9   telephone in the above-entitled matter and that the

        10   transcript page format is in conformance with the

        11   regulations of the Judicial Conference of the United States.

02:28   12

02:28   13   Date:  June 30, 2021

02:28   14

02:28   15
02:28                            /s/ Debbie Gale
02:28   16                   _____
02:28                        DEBBIE GALE, U.S. COURT REPORTER
02:28   17                   CSR NO. 9472, RPR, CCRR

02:28   18

        19

        20

        21

        22

        23

        24

        25
```