**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**HONORABLE DAVID O. CARTER, JUDGE PRESIDING**

- - - - - - -

UNITED STATES OF AMERICA, )
) **CERTIFIED**
Plaintiff, )
)
vs. ) No. 8:20-CR-00002-DOC
) Day 16, Jury Note 3
HOANG XUAN LE, also known as )
Wayne, *also known as Wangsta*, )
)
Defendant. )
______________________________________)

REPORTER'S TRANSCRIPT OF PROCEEDINGS

Jury Trial

Santa Ana, California

Thursday, December 9, 2021

Debbie Gale, CSR 9472, RPR, CCRR
Federal Official Court Reporter
United States District Court
411 West 4th Street, Room 1-053
Santa Ana, California 92701
(714) 558-8141

**APPEARANCES OF COUNSEL:**

FOR THE UNITED STATES OF AMERICA:

DEPARTMENT OF JUSTICE
OFFICE OF THE UNITED STATES ATTORNEY
BY: Gregory Shepherd Scally
Assistant United States Attorney
411 West 4th Street
8th Floor
Santa Ana, California 92701
714-338-3592
gregory.scally@usdoj.gov

DEPARTMENT OF JUSTICE
OFFICE OF THE UNITED STATES ATTORNEY
BY: Gregory Staples
Assistant United States Attorney
411 West 4th Street
8th Floor
Santa Ana, California 92701
714-338-3535
greg.staples@usdoj.gov

FOR DEFENDANT HOANG XUAN LE:

Craig Wilke (CJA appointed)
LAW OFFICE OF CRAIG WILKE
305 North Harbor Boulevard, Suite 216
Fullerton, California 92832
714-870-8900
craig@craigwilkelaw.com

Sheila Sarah Mojtehedi (CJA appointed)
LAW OFFICE OF SHEILA MOJTEHEDI
806 East Avenida Pico, Suite I-291
San Clemente, CA 92673
323-412-0472
sheila@mojtehedi.com

ALSO PRESENT:

Austin Casey, Special Agent, Coast Guard

**I N D E X**


| PROCEEDINGS | PAGE |
|---|---|
| JURY TRIAL - DAY 16 | |
| Jury Note Number 3 | 4 |
| Defense Position | 4 |
| Government position | 5 |
| Court's remarks | 6 |

**SANTA ANA, CALIFORNIA, THURSDAY, DECEMBER 9, 2022**

**Day 16, Juror Note 3**

(9:26 a.m.)

09:26 THE COURT: All right. We're on the record. And all counsel are present. The defendant's present. The investigating agency is present.

09:26 The Court received a note this morning through the clerk.

09:26 **JURY NOTE NUMBER 3**

09:26 THE COURT: Note Number 3:

09:26 "One of the jurors is unable to continue. She cannot make a decision. To quote: "I can't do this." She would like to be excused but the rest of the jury would like to continue to deliberate with an alternate if necessary."

09:27 Now, let me a stop for a moment, because whatever initial thoughts I have are not as important as your initial thoughts, or respective positions, even if you're not in agreement.

09:27 So let me turn to the defense first.

09:27 **DEFENSE POSITION**

09:27 MR. WILKE: Yes. Um, Your Honor, it's a difficult note because it is a bit vague.

09:27 However, I believe that it does not sufficiently indicate that this juror cannot continue to deliberate. It just indicates that there appears to be a disagreement between this juror, uh -- this juror's ability to reach a decision.

09:27 This, to me, goes straight to the deliberative process. And I would be very concerned about any further questioning of any of the jurors about this note because I think the Court risks, uh, receiving answers as to the status of the deliberations, what's going on in the jury room. And once we go there, I think it's a mistrial.

09:28 THE COURT: Counsel, let me turn to the government.

09:28 **GOVERNMENT POSITION**

09:28 MR. STAPLES: Your Honor, I -- I share the concern about getting into the merits or any juror deliberations. I don't agree that that's what -- Mr. Wilke's characterization of the note: She says she cannot make a decision. Quote, "I can't do this."

09:28 THE COURT: Okay.

09:28 MR. STAPLES: So unless the Court has an answer in the Court's handbook, we're probably likely gonna ask for some time to go research and consult with our appellate section.

09:28 THE COURT: I'd like you to go take some time.

And I'd like at least the clerk to convey to the jury that we've received the note and it's being discussed, so that they know that they're not under any pressure for further deliberation, if this is the situation; and that we're aware of it. But if they want to deliberate -- in other words, it's a nebulous response back from the clerk: The Court's received your note and it's being discussed. Okay?

09:29 Would that be sufficient?

09:29 MR. STAPLES: That's fine.

09:29 MR. WILKE: That's fine.

09:29 **COURT'S REMARKS**

09:29 THE COURT: Now, let me give you some initial thoughts because this is not in the judicial handbook when you do your search.

09:29 I've had this occur because you know that the state court has the predominant number of murder cases. Federal courts very rarely try a murder case so it will be somewhat new to the Ninth Circuit. But in the state court this is not unheard of.

09:29 First of all, in the past, when this has occurred -- I'm concerned that the foreperson of the jury is making that representation and that that juror is not personally making that representation to the Court.

09:29 The danger of that is, if this was a minority juror, a holdout, in a sense, then the other jurors and the

foreperson is speaking for that juror -- and his or her words.

09:30 It would seem, in the past, that it's most appropriate -- at least in my state court experience -- which has no relevance to this case -- that jury -- juror should personally be asked -- should be communicating through a note her personal desire to be excused, and that that note should come individually from that juror.

09:30 The second is, the one question that can't be asked without some limitation is Why?

09:30 And so one suggestion might be, quote/unquote:

09:30 "If the juror is personally asking to be excused, that juror may send a note to the Court individually. That note should include the reason the juror is asking to be excused without revealing any numerical or other information about the jury's deliberation or voting."

09:31 Because my fear is, watching one'a my colleagues in -- 1980s in state court -- was when the question asked was "Why?" the immediate answer was "because we're 10 to 2 or 9 to 3" -- the very thing we've cautioned them not to do.

09:31 So two prongs of this: This must be a personal -- or should be a personal request by that juror so that we know that this isn't undue pressure.

09:31 Number two, the personal representation should be that she's truly not able to continue.

09:31 And the third is "Why?" -- without divulging.

09:31 At that time, if that note was sent back -- and these are only suggestions. This isn't a ruling -- then that individual juror should be brought in for a colloquy amongst all of us.

09:32 In other words, it's a "step" process as we go. But based upon this note, in and of itself, I wouldn't be inclined to excuse.

09:32 MR. WILKE: May I have a moment, Your Honor, to confer with counsel?

09:32 THE COURT: Please.

09:32 Now, let me speculate for a moment. Let's just be blunt about this: What's lurking through your mind is if this is a holdout juror.

09:32 You don't know what that juror's holding out for. And you don't know in a retrial, for both of you, if they're between a voluntary and a second, and a second and a first, or a not guilty or whatever. So go check your statistics on a second trial -- for both of you. They're very interesting.

09:32 And it has nothing to do with this case, but might be surprised what the return is, historically, at least in the State court.

09:32 What it's saying is, what happens if this holdout juror's here? And in a second trial you end up here (Indicating.) That gets to be a tactical decision that the Court doesn't wanna enter into but be cautious about this both sides.

09:33 As far as going forward, don't worry about the time. We can retry this for twelve days, for goodness sakes, or whatever. That's not the issue. The issue is how are we going to treat this fairly so that if this is a minority juror, she is not being cast aside because of pressure, if they're 11 to 1 or 10 to 2. That's not appropriate.

09:33 By the same token, if she's truly not able to go forward -- and that's happened on many occasions, by the way. There's been genuine issues of physical or mental inability.

09:33 And, by the way, you'll find that the state courts have been oftentimes quick to excuse based upon this note. I don't agree with that. Okay?

09:33 So I think I would be minimally demanding of you, regardless of your conversation today, that this Court would feel most comfortable -- although I haven't made the ruling yet -- minimally starting in a process where that juror is expressly communicating individually by note with this Court -- and the reasons for it, but the caution that,

09:34 "Please don't tell us where you stand in your deliberations."

09:34 And then I would suggest to you we have another thoughtful discussion and decide if we're going to bring that juror in, and that we shape our questions very carefully in non-divulgence, and only then do I think that the Court is in a position to make that really tough call to one way or the other. But I'll leave that to you and your wisdom. Okay? But I've seen it three times before as a state court judge.

09:34 *(All government and all defense counsel confer.)*

09:34 *(Pause in the proceedings at 9:35 a.m.)*

09:36 *(Proceedings resumed at 9:36 a.m.)*

09:36 THE COURT: Okay. All right. Then we're back on the record. All counsel are present, the defendant, investigating agency.

09:36 And the clerk told me that you wanted to speak to the Court.

09:36 MR. WILKE: Yes, Your Honor. Thank you.

09:36 The parties have conferred. I think the parties are in agreement as to the Court's preliminary proposal to, uh, direct the -- respond to the juror note along the lines the Court initially indicated.

09:36 THE COURT: Just a moment.

09:36 I'm going to give you something that we were

09:36 typing out -- not as a ruling, but just trying to think ahead. And I don't mean second-story you, but the state courts try so many of these kinds of cases that this isn't -- it isn't common, but it's not unique.

And what you always have to fear is getting rid of a minority juror because of pressure when, in fact, they entertain a genuine belief. But -- and sometimes the state courts are too quick to do it, frankly.

09:37 So I want you to look at that proposal. I want you to wordsmith it, if you'd be so kind. I want you to add to it, criticize it. It's not a ruling; it's just an initial attempt, based upon some past history with this issue -- or kind of issue.

09:37 *(Document provided to counsel.)*

09:37 MR. WILKE: We're fine with this.

09:37 THE COURT: All right. I'm going to read that into the record to make certain, because this is a very delicate area. And, of course -- and I'm going to say this as a practical matter, not a legal matter: You're all guessing. In other words, you're all guessing right now where they are and what they're going to do.

09:37 It has to be obvious on the defense side if it wasn't a self-defense, maybe it's a voluntary; and you've got a juror who could swing that down -- okay? -- from eleven who wanted a second, for instance. You could come

back with a first degree in a new trial, or a not guilty, and then you're feeling: My gosh.

09:38 The same token on the government's side. You probably want a resolution. Whether it's a first or second isn't going to cause you an issue, and you're -- tactically, you know, if this is a minority juror, that minority juror, you're probably speculating, is a minority with the jury maybe going one degree above or one level above.

09:38 And I just say that to you in a practical matter because that's usually the thought process that goes through the respective sides. My job, as a judge, is just to make certain it's fair. That's it. So I'm hesitant to do what I've -- sometimes have seen in state court; and that is, to get a note like this from the foreperson, where the juror's not speaking to the Court. And there's been a myriad of cases where this note was sufficient in the state court, frankly. I'm reluctant in that regard.

09:38 All right. I think we need to attach this back, with your permission, to Note Number 3. And I need to sign it. And then we need to staple it together -- just that form so they can see the note. Just like that. And then look at it, in terms of form again, to be absolutely certain.

09:39 *(Document provided to all counsel.)*

09:39 THE COURT: With your consent, I'll simply send

09:39 that back. And we'll wait to see if the juror sends us an individual note.

09:39 And is that acceptable, Mr. Wilke?

09:39 MR. WILKE: Yes, sir.

09:39 THE COURT: Government, is that acceptable?

09:39 MR. STAPLES: Yes, Your Honor.

09:39 THE COURT: Then, pending further discussion, I would encourage us not to go very far.

09:40 In fact, I'm going to keep you, Mr. Le, in the courtroom. I expect, if the juror truly can't continue because of either mental or physical issues, that juror's going to make it known to the Court almost immediately through an individualized note.

09:40 (To the clerk:) Would you take that back.

09:40 *(Court reporter and Court confer.)*

09:40 THE COURT: Thanks, Deb.

09:40 It reads:

09:40 "If the juror is personally asking to be excused, that juror may send a note to the Court individually. That note should include the reason the juror is asking to be excused without revealing any numerical or other information about the jury's deliberation or voting."

09:40 Thank you very much.

09:40 Counsel, I'd just encourage you to remain seated actually -- or at least in the courtroom.

09:40 And, Mr. Le, we're gonna keep you available.

09:40 And ask the investigating agency to be available also.

09:40 *(Recess held at 9:40 a.m.)*

09:41 -oOo-

09:41

-oOo-

CERTIFICATE

I hereby certify that pursuant to Section 753, Title 28, United States Code, the foregoing is a true and correct transcript of the stenographically reported proceedings held telephone in the above-entitled matter and that the transcript page format is in conformance with the regulations of the Judicial Conference of the United States.

Date: January 12, 2022

/s/ Debbie Gale

DEBBIE GALE, U.S. COURT REPORTER
CSR NO. 9472, RPR, CCRR