**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**HONORABLE DAVID O. CARTER, JUDGE PRESIDING**

\- - - - - - -

UNITED STATES OF AMERICA, )
) **CERTIFIED**
Plaintiff, )
)
vs. ) No. 8:20-CR-00002-DOC
) Day 16
) Jury Note 3-A
HOANG XUAN LE, also known as )
Wayne, *also known as Wangsta*, )
)
Defendant. )
___________________________________)

REPORTER'S TRANSCRIPT OF PROCEEDINGS

Jury Trial

Santa Ana, California

Thursday, December 9, 2021

Debbie Gale, CSR 9472, RPR, CCRR
Federal Official Court Reporter
United States District Court
411 West 4th Street, Room 1-053
Santa Ana, California 92701
(714) 558-8141

**APPEARANCES OF COUNSEL:**

FOR THE UNITED STATES OF AMERICA:

DEPARTMENT OF JUSTICE
OFFICE OF THE UNITED STATES ATTORNEY
BY: Gregory Shepherd Scally
Assistant United States Attorney
411 West 4th Street
8th Floor
Santa Ana, California 92701
714-338-3592
gregory.scally@usdoj.gov

DEPARTMENT OF JUSTICE
OFFICE OF THE UNITED STATES ATTORNEY
BY: Gregory Staples
Assistant United States Attorney
411 West 4th Street
8th Floor
Santa Ana, California 92701
714-338-3535
greg.staples@usdoj.gov

FOR DEFENDANT HOANG XUAN LE:

Craig Wilke (CJA appointed)
LAW OFFICE OF CRAIG WILKE
305 North Harbor Boulevard, Suite 216
Fullerton, California 92832
714-870-8900
craig@craigwilkelaw.com

Sheila Sarah Mojtehedi (CJA appointed)
LAW OFFICE OF SHEILA MOJTEHEDI
806 East Avenida Pico, Suite I-291
San Clemente, CA 92673
323-412-0472
sheila@mojtehedi.com

ALSO PRESENT:

Austin Casey, Special Agent, Coast Guard

# I N D E X


| PROCEEDINGS | PAGE |
|---|---|
| JURY TRIAL - DAY 16 | |
| Jury Note 3-A (from Juror Number 2) | 4 |
| Government position | 4 |
| Defense Position | 6 |
| Discussion with Juror Number 2 | 17 |
| Court addresses jury | 26 |

**SANTA ANA, CALIFORNIA, THURSDAY, DECEMBER 9, 2021**

**Day 16, Juror Note 3-A**

(10:17 a.m.)

08:47 *(Outside the presence of the jury.)*

10:29 THE COURT: All right. We're back on the record.

10:29 Counsel are present, the defendant, the investigating agency.

10:29 **JURY NOTE 3-A**

10:29 THE COURT: We've received a note from Juror Number 2.

10:29 You have copies of that note. It states:

10:29 "I am asking to be excused from further deliberation. My experience in the jury deliberations has put my mental health into a position that has become dangerous to me. At this point I am unable to continue to subject myself to this and I need protect my mental health. Juror Number 2."

10:30 I'm going to look to each of you for input first, and then...

10:30 **GOVERNMENT POSITION**

10:30 MR. STAPLES: Well, based on the two notes we have received regarding this issue, the government's position is that juror should be excused. And just to make the record:

10:30 Based on these two notes, it's the government's position that her request is no way based upon her being a minority or taking any view at all. In fact, the first Note "3," says she cannot make a decision. Quote, "I can't do this." That's not indicating someone who's made up their mind and won't change it. That's someone who's having trouble coming to a decision. And that's in fact what she seems to be describing here.

10:30 The Court -- once the jury has begun deliberations, the Court can excuse a juror for good cause. One of the grounds for good cause is if that juror is incapable of applying the law to the facts. And that's what the second note we're calling "3-A" says -- in fact says.

10:31 She's telling us: I cannot do this. My mental health is at risk, a danger to me.

10:31 Someone with that position is not saying, "I'm being pressured." She's saying, "I cannot do this. I need to protect myself."

10:31 THE COURT: There are a myriad of cases in the state court system, including some of this Court's past involvement in this issue.

10:31 Would you like to do any further research in the area, or call to the Court's attention any similar cases, if I gave you time? Or do you wanna rest on your present argument?

10:31 MR. STAPLES: One moment.

10:31 *(Government counsel confer.)*

10:32 MR. STAPLES: We'd submit on our argument.

10:32 THE COURT: Mr. Wilke, what are your thoughts?

10:32 MR. WILKE: Thank you, Your Honor.

10:32 **DEFENSE POSITION**

10:32 MR. WILKE: Your Honor, I am still concerned that both -- they're both entitled "Jury Note 3." The original Jury Note 3 was from the foreperson. And then we have what I'll refer to as 3-A, which is the response from --

10:32 THE COURT: No. Just a moment. That's going to be confusing to an appellate court.

10:32 If you're going to state these notes -- because they were notes that came to us as "3" and then the subsequent note came to us as "3," just read the note into the record so any reviewing court will know exactly what all the parties are dealing with.

10:33 MR. WILKE: That's fine, Your Honor.

10:33 Both notes, collectively, I believe, are not certainly clear that Juror Number 2's request to be removed from the jury is not based on her feeling pressure from the other jurors to come to a particular decision that is contrary to her views about the case.

10:33 I do -- I'd direct the Court's attention to -- there's a -- I think the earliest case that sets forth this

10:33 standard is a case called *U.S. v. Symington* --

*(Court reporter requests clarification for the record.)*

10:33 THE COURT: Counsel, that wasn't reportable.

10:34 MR. WILKE: Wasn't?

10:34 THE COURT: Wasn't reportable.

10:34 For the record, it was too quick.

10:34 MR. WILKE: Yeah.

10:34 195 F.3d 1080, 1087, Ninth Circuit (1999).

10:34 And it sets forth, uh, "any reasonable possibility test" that the -- the removal of a juror -- the request to removing a juror stems from the juror's views on the merits of the case -- and if we're there, if there's any reasonable possibility, that these two notes -- uh, that the request to be removed has to do with Juror 2's views of the merits of the case, I don't think removal is -- is allowed.

10:34 And I think that the notes -- I think the government's position is, essentially, you can read these two notes together to rule out any reasonable possibility of that.

10:34 I think, collectively, they're just too ambiguous to do that at this point, so...

10:35 THE COURT: I'm going to make some suggestions to you. These aren't rulings. I'd like you to discuss this amongst yourselves. And this is only a suggestion.

10:35 I'm trying to count the number of times -- it's either two or three -- in a past career in state court that this has happened because -- the volume in my court -- because the volume of murder cases is much higher there.

10:35 The first note coming from the jury foreman:

10:35 "One of the jurors is unable to continue. She cannot make a decision. To quote, 'I cannot do this.' She would like to be excused but the rest of the jury would like to continue to deliberate with an alternative [sic] if necessary." (As read.)

10:35 I think you were very wise in acceding to the Court's initial thought. And that was sending back -- and I'd like to read that note into the record, Karlen. The note that I sent back to the jury.

10:36 Must have a copy of it.

10:36 You don't have to get it from them, but give me a copy of what I read.

10:36 Let's take some time with this so a reviewing court, whichever decision the Court makes, has a full record of this. The record will reflect, after discussion between counsel and the Court, the note that was sent back to the jury is,

10:38 "If the juror is personally asking to

be excused, that juror may send a note to the Court individually. That note should include the reason the juror is asking to be excused without revealing any numerical or other information about the jury's deliberation or voting."

10:38 That came from Note 3. But the note that we received back is also numbered "3," which is causing the confusion. And that note comes from Juror Number 2, and states:

10:38 "I am asking to be excused from further deliberation. My experience in the jury deliberations has put my mental health into a position that has become dangerous to me. At this point I am unable to continue to subject myself to this and I need to protect my mental health."

10:38 You've requested to go forward and you believe you have a sufficient basis from this note from the juror?

10:38 MR. STAPLES: Correct.

10:38 THE COURT: And is your position -- what procedurally? In other words, is there a further step that the Court should take before making this decision? Are you requesting a mistrial at this time? Are you requesting

further inquiry about [sic] the Court? In other words, if you have a resolution or a thought, without binding yourself to it, I'd be interested in hearing it. If not, then I'll make a suggestion to both of you.

10:39 MR. WILKE: I have no further statement, Your Honor.

10:39 THE COURT: Okay.

10:39 I've seen many courts in the past simply take this note, proceed forward, excuse the juror based upon this type of note. But that is an individual judicial decision in each court. And if the alternate then replaces that juror, all of us understand that the jury begins their deliberations all over again, and we'd need to instruct appropriately.

10:40 This is difficult. But I would feel much more comfortable, as a suggestion to both of you, that this juror is brought to court individually.

10:40 One of the many things we say to jurors is that when you judge a person, demeanor is one of the critical factors. And so, therefore, in anticipation of your not being in agreement, I've typed out the following for you to consider, but this is not a ruling. Juror Number 2, and only Juror Number 2, would be brought in, separate and apart from the other jurors:

10:40 "Without revealing any information

about where the jury stands, numerically or otherwise, is this worsening of your mental health described in the note based upon pressure from other jurors, or is it based on other factors unrelated to the deliberative process?

10:41 "Regardless of the deliberative process and any positions you have taken, are you physically or mentally unable to make a decision."

10:41 Now, it's going to give me the added benefit of making a very difficult call. But now I have demeanor that I can also consider, instead of a blank piece of paper.

10:41 I don't have to do that. I'm tossing that out to each of you in an abundance of caution, as one more procedural step. But otherwise, I'm quite prepared to make the decision now, one way or the other.

10:41 MR. WILKE: I have no objection to the Court --

10:41 THE COURT: Why -- why don't you two meet and confer for just a moment. You may not be in agreement so don't be concerned about that.

10:41 *(All government counsel and all defense counsel confer.)*

10:41 MR. STAPLES: The parties are agreeable to the Court -- and I assume the Court -- that the -- will make

clear that the answer to the first question the Court's proposing should just be a yes or no. The problem that we are having --

10:42 THE COURT: "Yes or no," absolutely. Now, just a moment.

10:42 I'd like to go back, though, because these were just tentative thoughts, trying to anticipate what might happen -- just like the initial thought that I had about the jury foreperson not writing about what one of the jurors was thinking; that that juror should be the person who communicated with the Court -- not through the foreperson.

10:42 So let me go back and look at this for just a moment, again -- if we're, you know, procedurally on the right track -- and then come back with a proposal for both of you to either add on, improve upon, or comment upon.

10:42 Give me about 15 minute.

10:42 MR. WILKE: Thank you, Your Honor.

10:42 *(Pause in the proceedings at 10:42 a.m.)*

10:53 *(Proceedings resumed at 10:53 a.m.)*

10:53 THE COURT: We're back on the record. All counsel are present. The defendant's present.

10:53 Counsel, we looked at *United States v. Symington,* which was your suggestion. Quote:

10:53 "If the record evidence discloses any reasonable possibility that the impetus

for a juror's dismissal stems from the juror's views on the merits of the case, the Court must not dismiss the juror. Such circumstances" -- or, "Under such circumstances, the trial judge has only two options: Send the jury back to continue deliberating or declare a mistrial."

10:53 Now, I'm not saying that the state practice is different, but I am saying that we have language and guidance from the Ninth Circuit.

10:54 I would suggest, subject to your input, that the Court bring Juror Number 2 into court, separate and apart from all the other jurors; that I ask:

10:54 "Without revealing any information about where the jury stands, numerically or otherwise, is this worsening of your mental health based on pressure from other jurors due to your views on the merits of the case, or is it based on other factors unrelated to the deliberative process? Yes or no?"

10:54 That language follows *Symington* more than the Court's initial thought.

10:54 Second:

10:54 "Regardless of the deliberative process and any positions you have taken, are you physically or mentally unable to make any decision applying the law to the facts of this case? Yes or no?"

10:55 And after hearing that, then each of you may decide whether you wish to take a position concerning a mistrial, and I'll take a break after that discussion, or to continue forward because your interest may be as paramount as the government's interest in going forward.

10:55 I'm going to give you copies of these suggestions for you to look at. If you have any better wordsmithing, I'd like you to get together to see if you can reach an agreement; if not, then my proposal is that it will place the Court in a better position also having the juror in our presence, seeing the demeanor of the juror, which is not measurable in a note.

10:55 And there are a myriad of cases, Counsel, in the state courts where the juror has been replaced under these circumstances. It's quite common. But that doesn't mean that that is correct, and it doesn't mean that that should be the federal standard.

10:56 And depending upon what the juror has -- I'm trying to foresee a number other things that can occur, but

I don't wanna suggest these things until we get the answers from the juror.

MR. WILKE: May I confer with counsel, Your Honor?

THE COURT: Please. I'd like to see if each of you can wordsmith it better than the Court's attempted to.

*(All government and all defense counsel confer.)*

MR. STAPLES: The suggestion from the parties is altering Question Number 1 to read:

"Without revealing any information
about where the jury stands, numerically
or otherwise, is this worsening of your
mental health based on pressure from
other jurors to reach a specific
verdict?"

Stop. And then delete "or is it based on other factors?"

THE COURT: If you'd give us that, we'll type it out so I can't make a mistake.

Is this acceptable, Mr. Wilke, to you and the government?

MR. WILKE: It is acceptable.

I would just add "yes or no" at the end of the question.

MR. STAPLES: I meant --

MR. WILKE: So it just asks for a yes or no

answer.

THE COURT: That will be a reminder for me. Because, in fact, we could literally give her this question, as I ask the question, so she's looking at the question, so there can't be a mistake.

MR. STAPLES: And then the second question is fine.

THE COURT: Okay.

MR. STAPLES: May I approach?

THE COURT: Then let us wordsmith this quickly.

MR. STAPLES: You want our copy?

THE COURT: Destroy those copies, so we don't have numerous copies. And we'll make a new copy for you.

*(Document returned to the Court.)*

*(Pause in the proceedings at 10:59 a.m.)*

*(Proceedings resumed at 11:03 a.m.)*

THE COURT: All right. Then, Counsel, we're on the record.

I've distributed in written form the proposed questions with your suggestion. And with your consent, I'd literally like to give this to Juror Number 2 so she can read along with us.

Would that be acceptable when she comes into court?

MR. STAPLES: Yes, Your Honor.

11:04 MR. WILKE: Yes, Your Honor.

11:04 THE COURT: Is there any reason why I shouldn't summon Juror Number 2 at the present time?

11:04 MR. STAPLES: No, Your Honor.

11:04 MR. WILKE: No, Your Honor.

11:04 THE COURT: Kelly or Karlen, would you be so kind to ask Juror Number 2 to join us.

11:05 *(Outside the presence of the jury.)*

11:05 *(Juror Number 2 present.)*

11:05 THE COURT: Thank you so much. If you'd be kind enough to take Seat Number 2, please.

11:06 First, good morning.

11:06 Counsel are present, the defendant, the investigating agency.

11:06 **DISCUSSION WITH JUROR NUMBER 2**

11:06 THE COURT: We've received a number of notes. In the last note, you were kind enough to respond to our inquiry. And the last note we received was,

11:06 "I'm asking to be excused from further deliberation. My experience in the jury deliberations has put my mental health into a position that has become dangerous to me. At this point I'm unable to continue to subject myself to this and I need for protect my mental

health."

11:06 Now, I don't want you to respond yet. We actually printed out two questions we may have for you.

11:06 Do you have those questions in your possession?

11:06 JUROR NUMBER 2: Is that this? (Indicating.)

11:06 THE COURT: Yeah. Would you just read that silently to yourself, and not respond to them for a moment, so that when I read them into the record, you've had time to read those questions and reflect. And then I'll verbally read these questions to you.

11:07 Let me start very slowly:

11:07 "Without revealing any information about where the jury stands, numerically or otherwise, is this worsening of your mental health based on pressure from other jurors to reach a specific verdict?"

11:07 And we're only answering -- or asking for a "yes" or "no" answer at this time.

11:07 JUROR NUMBER 2: Yes.

11:07 THE COURT: Okay.

11:08 "Regardless of the deliberative process and any positions you've taken, are you physically or mentally unable to make any decision" --

11:08 And let me repeat that: "Any decision."

11:08 " -- applying the law to the facts of this case?"

11:08 And, once again, we would ask yes or no. And take your time with that, please.

11:09 JUROR NUMBER 2: Your Honor, I don't how to answer this.

11:09 THE COURT: Okay.

11:09 JUROR NUMBER 2: I'm sorry. Without -- without elaborating, I can't give you an answer right here.

11:09 THE COURT: Okay. Without getting into the discussions or the deliberations?

11:09 JUROR NUMBER 2: Exactly.

11:09 THE COURT: Then we don't want you to answer. It's just a yes or no.

11:09 We're going to have just a brief discussion outside your presence. We're going to ask you to wait out in the hallway for just one moment. And we won't take you back to the jury deliberation room at this time or excuse you at the time.

11:10 *(Juror Number 2 escorted from the courtroom.)*

11:10 THE COURT: All right. Counsel, if you'd have a seat. I'd like to get the direct language from *Symington*, that paragraph. *United States v. Symington* the Ninth Circuit held that, quote:

11:10 "If the record evidence discloses reasonable possibility that the impetus for a juror's dismissal stems from the juror's views on the merits of the case, the Court must not dismiss the juror. Under such circumstances, the trial judge has only two options: Send the jury back to continue deliberating or declare a mistrial."

11:11 Your respective positions.

11:11 MR. STAPLES: We would -- we would say send her back to deliberate. I mean, she was not able to say -- she wasn't able to answer question 2, which I think coulda been answered without getting into the merits. She's not telling us she cannot deliberate so...

11:11 THE COURT: Okay.

11:11 Mr. Wilke?

11:11 MR. WILKE: I would agree with the government that, under the current record, um, the Court has two options here: Mistrial or send her back to deliberate.

11:11 I might suggest, um, a rereading to the entire jury.

11:11 THE COURT: Just a moment. Why don't you two consult for just a moment. Remember, I'll follow your guidance if you're in agreement and it's reasonable.

11:12 But before we get into the process and procedure, I'd like the courtesy of you meeting for a moment.

11:12 *(All government and all defense counsel confer.)*

11:13 THE COURT: Now, just one moment, Counsel.

11:13 I'll be right with you.

11:13 *(Pause in the proceedings at 11:13 a.m.)*

11:16 THE COURT: Then, Counsel, you've met and conferred. Any suggestions?

11:16 MR. WILKE: Yes, Your Honor. I think the proposal is to bring the entire jury back out to instruct the jury that the Court is a declining to excuse Juror Number 2, and then give a modified version of Ninth Circuit 7-1, which is the duty to deliberate.

11:16 THE COURT: That, "if you can consciously reach a decision," et cetera?

11:16 MR. WILKE: Yes.

11:16 THE COURT: I was anticipating that.

11:16 But I'd like to make certain that we literally have that for my reading; that I'm doing no ad-libbing.

11:16 MR. WILKE: Right.

11:16 THE COURT: So I'd like you to physically write out, between the two of you, exactly what you'd like the Court to say, in terms of the -- Juror Number 2.

11:16 I think we're all in agreement. I just wanna make certain that the Court's saying something appropriate.

11:16 And Number two, I'd like to see that modified instruction.

11:16 MR. WILKE: Yes. Five minutes, we can have it to the Court.

11:17 THE COURT: We have it in the packet.

11:17 MR. WILKE: I think the language --

11:17 THE COURT: Time out. Let's meet and confer and do that. Okay. It's as simple as --

11:17 MR. WILKE: That's fine.

11:17 THE COURT: If we're all in agreement, it's just how we wordsmith it to make certain there's no ad-libbing.

11:17 The question for both of you will be what happens if, after further deliberation, we get the same response? I think we simply leave that on the table, after we make the attempt at further deliberation. And whether that's an hour or day, I commend all of you for making that effort. Okay?

11:17 All right. Email that to chambers --

11:19 MR. WILKE: Yeah.

11:19 THE COURT: -- to save some time.

11:19 Do you want us to inform Juror Number 2 of this decision outside the presence of the jury, before we call them in, so there's no surprise? Or are you expecting that she might express additional concerns? In other words, your guidance and wisdom is always appreciated; if not, I'm happy to make the decision.

11:19 MR. STAPLES: The government's view is, as a simple courtesy, we should tell her.

11:19 THE COURT: And I'd like you two to draft what you'd like the Court to say to her outside the presence of the jury, as well as to the entire jury body.

11:20 *(All government and all defense counsel confer.)*

11:25 MR. WILKE: Your Honor, we have two proposed instructions for the Court. One to Juror Number 2, individually, one to the jury as a whole.

11:25 THE COURT: Can I get those printed out and emailed back to our chambers?

11:25 MR. WILKE: I will email both of those right now.

11:25 THE COURT: And are you both in agreement with what I'm about to receive as far as wordsmithing is concerned?

11:26 MR. STAPLES: Yes, Your Honor.

11:27 THE COURT: Okay. Do you want me to leave Number 2 in the room when summoning the other jurors?

11:27 MR. WILKE: I think she can come in first, and then you can bring the other jurors in.

11:27 THE COURT: Okay. It will take a few moments to bring them down the hallway, but we'll do that.

11:27 *(Documents provided to the Court.)*

11:29 THE COURT: Thank you.

11:29 Just a moment, Counsel. This is a hybrid.

11:29 Which portion do you want read to Juror Number 2?

11:29 MR. WILKE: Uh, well, the -- the first one that says that "the Court declines to excuse you." And then that's been modified to include -- rest of 7.1.

11:29 THE COURT: That doesn't answer my question. It would seem to me that I would only inform Juror Number 2, separate and apart from the jury:

11:29 "The Court is -- declined to excuse you. And will instruct the jury to continue it's deliberations. Discuss the case with your fellow jurors to reach a verdict, if you can do so. Your verdict, whether guilty or not guilty, must be unanimous."

11:29 Now, I would think that this is not what we wanna do. I would think that what we would simply say to Juror Number 2 is:

11:30 "The Court is declining to excuse you at the present time and will instruct the jury to continue your deliberations," period.

11:30 MR. WILKE: That's fine.

11:30 THE COURT: Then I think we would bring in the entire jury. And I would think that we would start with:

11:30 "The Court has declined to excuse

Juror Number 2 and is instructing the jury to continue its deliberations. Discuss the case with your fellow jurors" --

11:30 And then read the entirety of this to them.

11:30 MR. WILKE: I think that's fine.

11:30 THE COURT: I think that's the courtesy; but otherwise, we're reading twice and emphasizing.

11:30 Karlen, would you bring in Juror Number 2.

11:30 And, Counsel, I am going to have her wait out in the hallway so she doesn't have the awkwardness of waiting for the jury, whether it takes 5 minutes or 10 minutes to bring 'em down the hallway. And then she'll come back in with the composite.

11:31 *(Juror Number 2 present.)*

11:31 THE COURT: All right. Counsel, if you'd be seated. All parties are present, and the defendant, as well as the agency.

11:31 "The Court's declining to excuse you, and I'm going to instruct the jury to continue its deliberations."

11:31 I'm going to ask you to wait out in the hallway for just a moment, and I'm going to read an instruction to all of you as a composite body in a few moments.

11:31 Thank you for your courtesy.

11:31 *(Jury Number 2 escorted from the courtroom.)*

11:31 THE COURT: Now, Counsel, one other comment. If you noticed, I did not add the words, "the Court declines to excuse you at this time."

11:31 I'm doing that purposefully because there should be no inference on the Court's part. So now we'll assemble simply the jury as a whole, along with Juror Number 2, as a composite body.

11:33 And, Counsel, I'm going to summon the alternates with your permission; is that acceptable?

11:33 MR. WILKE: That's fine, Your Honor.

11:33 THE COURT: Okay.

11:33 Karlen, can you make sure that the alternates join us along with the composite jury.

11:33 *(In the presence of the jury.)*

11:34 THE COURT: Counsel, if you'd be seated. Thank you for your courtesy. We're still on the record. All counsel are present, the defendant, the agencies involved. All twelve of the composite jurors are present and the two alternates.

11:34 **COURT ADDRESSES JURY**

11:34 THE COURT: First of all, thank you for your notes. Obviously, we've been discussing everything that you sent to us. Very much appreciated.

11:35 "The Court has declined to excuse

Juror Number 2 and instructs the jury to continue your deliberations. Discuss the case with your fellow jurors to reach agreement, if you can do so. Your verdict, whether guilty or not guilty, must be unanimous. Each of you must decide the case for yourself, but you should do so only after you have considered all the evidence, discussed it fully with the other jurors, and listened to the views of your fellow jurors.

11:35 "Do not be afraid to change your opinion if the discussion persuades you that you should. But do not come to a decision simply because other jurors think it is right. It is important that you attempt to reach a unanimous verdict but, of course, only if each of you can do so after having made your own conscientious decision. Do not change an honest belief about the weight and effect of the evidence simply to reach a verdict.

11:36 "Perform these duties fairly and

impartially. Do not allow personal likes or dislikes, sympathy, prejudice, fear, or public opinion to influence you. You should also not be influenced by any person's race, color, religious beliefs, national ancestry, sexual orientation, gender identity, gender, or economic circumstances. Also do not allow yourself to be influenced by personal likes or dislikes, sympathy, prejudice, fear, public opinion, or biases, including unconscious biases.

11:36 "Unconscious biases are stereotypes, attitudes, or preferences that people may conscientiously [sic] reject but may be expressed without conscious awareness, control or intention.

11:36 "It is your duty, as jurors, to consult with one another and to deliberate with one another with a view towards reaching an agreement, if you can do so. During your deliberations, you should not hesitate to re-examine your own views and change your opinion if you become persuaded that it is

wrong."

11:37 We're going to excuse the jury to continue further deliberations with our thanks and appreciation.

11:37 *(Jury returns to jury room.)*

11:37 *(Outside the presence of the jury.)*

11:37 THE COURT: Counsel, thank you for your input, and thank you for your presence.

11:37 If you'd remain almost immediately available, appreciate it.

11:37 MR. WILKE: Thank you, Your Honor.

11:37 THE COURT: Thank you very much. We're in recess.

11:37 *(Recess held at 11:37 a.m.)*

11:37 -oOo-

11:37

-oOo-

CERTIFICATE

I hereby certify that pursuant to Section 753, Title 28, United States Code, the foregoing is a true and correct transcript of the stenographically reported proceedings held telephone in the above-entitled matter and that the transcript page format is in conformance with the regulations of the Judicial Conference of the United States.

Date: January 13, 2022

/s/ Debbie Gale
______________________________
DEBBIE GALE, U.S. COURT REPORTER
CSR NO. 9472, RPR, CCRR